**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| Blackjewel, L.L.C., *et al.*, | ) | Case No. 19-bk-30289 |
| Debtors.[1] | ) | (Joint Administration Requested) |
| _____ | ) | |
| | ) | Adversary Proceeding |
| Shawn Abner, | ) | No. _____ |
| Jacob Helton, | ) | |
| Billy Hatton, | ) | |
| Individually and on behalf of others | ) | CLASS ACTION ADVERSARY |
| similarly situated, | ) | PROCEEDING COMPLAINT |
|   Plaintiffs, | ) | |
| | ) | |
|   v. | ) | |
| | ) | |
| Blackjewel, L.L.C., | ) | |
| Revelation Energy, LLC, | ) | |
| Lexington Coal Co., LLC, | ) | |
| Jeff Hoops, Sr. | ) | |
| Jeffers A. Hoops, II | ) | |
|   Defendants | ) | |
| | ) | |

## CLASS ACTION ADVERSARY PROCEEDING COMPLAINT

The Plaintiffs, individually and on behalf of others similarly situated, by and through the

undersigned counsel, bring this action arising out of violations of the West Virginia Wage

Payment and Collection Act, W. Va. Code § 21-4-1 *et seq*., the Kentucky Revised Statutes, §

337.010 *et seq*., the Code of Virginia, §§ 40.1-29 and 16.1-77, 79, the Employee Retirement

Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq*., and the Worker Adjustment and

Retraining Notification (WARN) Act, 29 U.S.C. § 2101 *et seq*. arising out of Defendants mass

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Blackjewel, L.L.C. (0823); Blackjewel Holdings L.L.C. (4745); Revelation Energy Holdings, LLC (8795); Revelation Management Corporation (8908) and Revelation Energy, LLC (4605). The headquarters of each Debtor is located at 1051 Main Street, Milton, West Virginia 25541-1215.

lay off of Plaintiffs – employees of Defendant's mining operations in Kentucky, West Virginia, and Virginia – in July 2019.

Defendants failed to pay wages that were due under the applicable wage payment statutes on or about June 28, 2019, and again on or about July 12, 2019.  For a period of several months in 2019, Defendants failed to pay benefits that were due to and earned by the Plaintiffs. Defendants also failed to provide their full-time employees with the sixty-days of notice required under the WARN Act prior to laying off more than 50 of those workers at each of several sites of employment, beginning in July 2019. As to all of these actions, Defendants acted as a joint employers of the Plaintiffs in all relevant respects, as set forth below.

Plaintiffs bring this action, pursuant to Federal Rule of Civil Procedure 23, on their own behalf and on behalf of the Defendants' other similarly-situated employees, for damages, interest, costs, and fees, pursuant to the aforementioned statutes and the common law.

## Parties

1.      Plaintiff, Mr. Shawn Abner, was a full-time employee of Blackjewel, L.L.C. and the other Defendants, as joint employers, since August 2018.  Mr. Abner worked for those Defendants at the coal-mining and preparation site known as the Pax Surface Mine located in Fayette County, West Virginia, at the time that he was laid off without prior written notice on or about July 1, 2019.  At all times relevant herein, Mr. Abner has resided in Raleigh County, West Virginia.

2.      Plaintiff, Mr. Jacob Helton, was a full-time employee of Blackjewel, L.L.C. and the other Defendants, as joint employers, at all relevant times.  Mr. Helton worked for those Defendants at the coal-mining and preparation site known as the D-29 Darby Mine in Harlan

County, Kentucky at the time that he was laid off without prior written notice on or about July 1,

2019.  At all times relevant herein, Mr. Helton has resided in Bell County, Kentucky.

    3.       Plaintiff, Mr. Billy Hatton, was a full-time employee of Blackjewel, L.L.C. and

the other Defendants, as joint employers, at all relevant times.  Mr. Hatton worked for those

Defendants at the coal-mining and preparation site known as the D-7 Mine in Wise County,

Virginia, at the time that he was laid off without prior written notice on or about July 1, 2019.  At

all times relevant herein, Mr. Hatton has resided in Letcher County, Kentucky.

    4.       Upon information and belief, Defendants maintained commercial facilities in

Kentucky, Virginia, West Virginia, and Wyoming ("Facilities").

    5.       The debtors in the Chapter 11 bankruptcy proceeding in this Court numbered

3:19-bk-30289 are referred to herein as the Blackjewel Defendants ("Blackjewel Defendants") --

- Blackjewel, L.L.C. (0823); Blackjewel Holdings L.L.C. (4745); Revelation Energy Holdings,

LLC (8795); Revelation Management Corporation (8908) and Revelation Energy, LLC (4605).

    6.       Blackjewel, L.L.C. is chartered in Delaware, and has its principal place of

business at 1051 Main Street, Suite 2, Milton, West Virginia, 25541.  The sole member of

Blackjewel, L.L.C. is Blackjewel Holdings, Inc., located at 1051 Main Street, Suite 2, Milton,

West Virginia, 25541.  Blackjewel Holdings, Inc. is not registered with the Secretary of State of

West Virginia.

    7.       Lexington Coal Company, LLC is chartered in Delaware, and has its principal

place of business at 1051 Main Street, Suite 2, Milton, WV, 25541.  The sole member of

Lexington Coal Company, LLC is Lexington Coal Holdings, Inc., also located at 1051 Main

Street, Suite 2, Milton, West Virginia, 25541.  Lexington Coal Holdings, Inc. is not officially

registered with the Secretary of State of West Virginia.  The sole manager designated with the

West Virginia Secretary of State by Lexington Coal Company, LLC is David Keith Runyon, also with an address listed as 1051 Main Street, Suite 2, Milton, West Virginia, 25541.

8.      Upon information and belief, Defendant Mr. Jeff Hoops, Sr. was at all times relevant a resident of Putnam County, West Virginia, and held a controlling beneficial interest in the other Defendant entities.

9.      Upon information and belief, Defendant Mr. Jeffery A. Hoops II was at all times relevant a resident of Putnam County, West Virginia, held a controlling beneficial interest in the other Defendant entities, and served as administrator of the Revelation Energy 401(k) Plan and, upon information and belief, also served as administrator of the group health plan or plans that the Defendants provided to their employees.

10.      At all relevant times, Plaintiffs were jointly employed by the Defendants as full-time employees, and worked at one or more of the Facilities until they were laid off, terminated, or reduced in force on or about July 1, 2019 at the direction and under the control of Defendants.

11.      On or about July 1, 2019, the Blackjewel Defendants filed a voluntary petition with this Court for relief by way of bankruptcy protection under Chapter 11 of the United States Code.

### Jurisdiction and Venue

12.      Jurisdiction over this adversary proceeding is founded on 28 U.S.C. §§ 157, 1331, 1334, and 1367.

13.      This is a core proceeding pursuant to 28 U.S.C. §§  157(b)(2)(A), (B), and (O).

### Facts

***Non-payment of wages and benefits in June-July 2019; incomplete payment of benefits in 2019.***

4

14.     During the year 2019, the Defendants owned, operated, and controlled several mining facilities that produced and prepared coal in the states of West Virginia and Wyoming and the commonwealths of Kentucky and Virginia.

15.     The Plaintiffs engaged in full-time employment for the Defendants during the calendar year of 2019, and continuing up through the date of July 1, 2019.

16.     The Defendants contributed benefits to the Plaintiffs under the 401(k) Plan in regular amounts specified on each paystub (the "Employer's Contributions").

17.     The Plaintiffs also contributed their wages to the plan in amounts that were earned by the Plaintiffs on their regular payment cycle, and which the paystubs issued by Defendants represented as having been deducted from each paystub and provided to the Plaintiffs in their 401(k) (the "Employee's Contributions").

18.     The Defendants were obligated pursuant to the terms of the Plan to provide the Plaintiffs with the Employer's Contributions in the amounts specified on each paystub.

19.     The Defendants were obligated pursuant to the terms of the Plan to provide the Plaintiffs with the Employee's Contributions in the amount withheld from each paycheck.

20.     The last date of labor for which the Defendants compensated the Plaintiffs at all was June 10, 2019.

21.     Defendants represented to the Plaintiffs that they deducted certain sums from their biweekly paychecks and deposited those sums into a 401(k) account.

22.     However, upon information and belief, the Defendants did not pay, deduct, or deposit those specified sums throughout one or more periods in 2019 that extended beyond 19 days in length.

23.    Defendants represented to the Plaintiffs that, separate and apart from payroll deductions, the Defendants contributed certain sums to the Plaintiffs' 401(k) accounts.

24.    Upon information and belief, the Defendants did not contribute those specified sums, and moreover the period or periods in which such non-contribution persisted were also greater than 19 days in length.

***Defendants refused to allow Plaintiffs access to retirement funds or even to file complaints regarding in the inaccessibility of those funds.***

25.    Plaintiff Shawn Abner corresponded with the Defendants in order to withdrawal funds from his 401(k).

26.    Defendants stated that they would not permit him to do so because his employment had not been terminated.

27.    Defendants stated that they would not process any requests or complaints regarding the 401(k) accounts because the employees had not been terminated.

28.    Termination of employment was not a precondition for withdrawing or in any other way utilizing funds earned in the 401(k) accounts of the Plaintiffs.

29.    Plaintiffs reasonably understood that it would be futile to pursue further complaints with the Defendants regarding inaccessibility of their retirement funds, or to make further requests for accessing their retirement funds.

***Defendants did not provide required notices regarding the mass layoff***

30.    Prior to July 1, 2019, Defendants, both on their own and jointly, employed 100 or more employees, including Plaintiffs, excluding part-time employees, at or in connection with the Facilities.

31.    Each of the following sites were known by the following common names and each constituted a "single site of employment" for purposes of the WARN Act: the Pax Mine in

6

Fayette County, West Virginia; the Cumberland Mine Complex in Harlan County, Kentucky and

Dickenson County, Virginia, including the D-11 Cloverlick/Panther in Harlan County,

Kentucky; and D-21 Mine in Harlan County, Kentucky; D-28 (Huff Creek) in Kentucky; D-31 in

Kentucky;  D-9 Mine in Kentucky; P-8 Mine in Kentucky; S-17 Mine in Kentucky; and D-7

Osaka Mine in Virginia (collectively, the "Sites").

32.      On or about July 1, 2019, Defendants verbally notified Plaintiffs that they were

laid off indefinitely.

33.      On or about that date of July 1, 2019, fifty or more employees were laid off from

full-time employment for an indefinite period by the Defendants at the Sites, and at other single

sites of employment known and unknown, or were thus laid off at such sites within a 90-day

period encompassing that date.

34.      Neither Jeffery Hoops, Sr., Jeffery A. Hoops, II, nor any other Defendant

provided notice to the Plaintiffs or their spouses or other relevant plan beneficiaries regarding

their rights under 29 U.S.C. 1166.

### *Defendants were joint employers and integrated enterprises---sharing capital, sharing profits, sharing common control, and ignoring corporate formalities*.

35.      All of the employees at each of the aforementioned Sites were engaged in a

common operational purpose, under common management, used common equipment, and were

under the Defendants' *de facto* and *de jure* management, maintenance, and control.

Representatives of each of the three Defendants routinely ordered, directed, and/or controlled the

Plaintiff and other workers throughout each Site on a regular basis.

36.      At all times relevant to this action, each Site was under the Defendants' *de jure*

and *de facto* ownership and control as an employer and a mine operator.

7

37.     Upon information and belief, employees of Defendants directed the workforce at each Site and participated in implementing the layoff that forms the basis of the instant action.

38.     On or about July 1, 2019, the Defendants laid off, terminated, or reduced-in-force 50 or more employees at each Site, separating those individuals from full-time employment.

39.     Neither the Plaintiffs nor the others of Defendants' employees received written notice that the employees would be laid off prior to the occurrence of that layoff in 2019.

40.     At all times relevant, Jeffery Hoops Sr. was the *de facto* owner and controller of the Defendant entities, by and through Lexington Coal Company, LLC, upon information and belief.

    a.   Hoops Sr. personally managed the business affairs of the Sites directly, and through agents who he personally employed and controlled, such as by directing or authorizing those agents to make capital outlays for the Sites.

    b.   Hoops Sr. directed the business affairs of the Debtors in significant part through individuals who were jointly employed Defendant Hoops and Defendant Lexington Coal Company, LLC---including, but not limited to, Tom Michaels.

    c.   Upon information and belief, Hoops Sr. personally exercised control over the sale of coal by the Debtors to Lexington Coal Company, LLC, and in turn, upon information and belief, personally exercised control over the further sale of that coal to third parties.

41.     Defendant entities acted jointly under the common direction and control of Defendant Jeffery Hoops Sr., who was the *de facto* owner and controller of the Defendant

entities and who was the employer or joint employer of the Plaintiffs along with the Defendant entities.

42.      Lexington Coal Company, LLC was a joint employer of the Plaintiffs, along with the other Defendants.

43.      The Defendants constitute an integrated enterprise and, as such, they are not in fact bankrupt. Specifically, upon information and belief:

a.      Lexington Coal Company continues to do business and derive substantial revenue as a solvent entity.

b.      Lexington Coal Company provided operating capital to the other Defendants at the mining operations that were permitted in the name of Blackjewel, L.L.C.

c.      The sole member-owner registered with the West Virginia Secretary of State as to the Lexington Coal Company is Lexington Coal Holdings, Inc.---an entity that is ignoring corporate formalities by failing to register with the Secretary of State in West Virginia.

d.      In reality, Lexington Coal Company is under the *de facto* control of Defendant Jeffery Hoops and/or his immediate family members, and is a *de facto* single employer together with the other Defendants for purposes of the WARN Act and other relevant statutes as pleaded in this Complaint.

e.      Lexington Coal Company has received profits from the sale of coal by the Facilities.

f.       The agents of Defendants Jeffery Hoops and Lexington Coal Company,

including but not limited to Tom Michaels, exercised managerial control of the Facilities

during relevant periods.

**Count I - Kentucky Wage Violations**
**Ky. Rev. Stat. Sec. 337.020**

44.       Plaintiffs repeat and re-allege the foregoing paragraphs.

45.       The Defendants jointly employed Mr. X, Y, and Z ("Kentucky Plaintiffs") as

employees.

46.       "'Employer' is any person, either individual, corporation, partnership, agency, or

firm who employs an employee and includes any person, either individual, corporation,

partnership, agency, or firm acting directly or indirectly in the interest of an employer in relation

to an employee." Ky. Rev. Stat. § 337.010(d).

47.       An employee is "is any person employed by or suffered or permitted to work for

an employer," subject to inapplicable exceptions.  Ky. Rev. Stat. § 337.010(e).

48.       "'Wages' includes any compensation due to an employee by reason of his or her

employment, including salaries, commissions, vested vacation pay, overtime pay, severance or

dismissal pay, earned bonuses, and any other similar advantages agreed upon by the employer

and the employee or provided to employees as an established policy." Ky. Rev. Stat. §

337.010(c)(1).

49.       "Every employer doing business in [Kentucky] shall, as often as semimonthly,

pay to each of its employees all wages or salary earned to a day not more than eighteen (18) days

prior to the date of that payment. . . . No employer subject to this section shall, by any means,

secure exemption from it. Every such employee shall have a right of action against any such

employer for the full amount of his wages due on each regular pay day." Ky. Rev. Stat. § 337.020.

50.     Defendants did not pay to the Kentucky Plaintiff, or to their other Kentucky employees, all wages or salaries earned for any date following June 9, 2019.

51.     As joint employers of the Kentucky Plaintiff and the other employees at the Kentucky Sites, the Defendants are liable for unpaid wages and liquidated damages in Kentucky. Ky. Rev. Stat. § 337.385.

52.     "[A]ny employer who pays any employee less than wages and overtime compensation to which such employee is entitled under or by virtue of KRS §§ 337.020 to 337.285 shall be liable to such employee affected for the full amount of such wages and overtime compensation, less any amount actually paid to such employee by the employer, for an additional equal amount as liquidated damages, and for costs and such reasonable attorney's fees as may be allowed by the court." Ky. Rev. Stat. § 337.385(1).

53.     The Kentucky Plaintiffs are, therefore, entitled to recover the wages and damages due to them, including interest, in addition to liquidated damages equivalent to one times the amount which was unpaid when due, and attorney fees, pursuant to Ky. Rev. Stat. §§ 337.020, 385(1).

## Count II – West Virginia Wage Violations
## West Virginia Wage Payment and Collection Act
## W.Va. Code § 21-5-1 – 13

54.     Plaintiffs repeat and re-allege the foregoing paragraphs.

55.     The Defendants jointly employed Mr. Shawn Abner (the "West Virginia Plaintiff") as an employee who was suffered or permitted to work by the Defendants jointly, within the meaning of W. Va. Code § 21-5-1(b),(m).

56.      "Every person, firm or corporation doing business in this state . . . shall settle with

its employees at least twice every month and with no more than 19 days between settlements,

unless otherwise provided by special agreement, and pay them the wages due, less authorized

deductions and authorized wage assignments, for their work or services." W. Va. Code § 21-5-

3(a).

57.      For all relevant purposes, "the term 'wages' shall also include then accrued fringe

benefits capable of calculation and payable directly to an employee[.]" W. Va. Code § 21-5-1(c).

58.      Wages due to the West Virginia Plaintiff included cash wages, Employee's

Contributions to Plaintiff's 401(k) account, Employer's Contributions to 401(k) Plan in sums

stated on each paystub that Defendants represented as having been paid to the Plaintiff upon

delivery of each paystub, and other health and welfare benefits.

59.      "[W]hen an employee for any reason whatsoever is laid off, the person, firm or

corporation shall pay in full to the employee not later than the next regular payday, either

through the regular pay channels or by mail if requested by the employee, wages earned at the

time of suspension or layoff." W. Va. Code § 21-5-3(d).

60.      "If a person, firm or corporation fails to pay an employee wages as required under

this section, the person, firm or corporation, in addition to the amount which was unpaid when

due, is liable to the employee for two times that unpaid amount as liquidated damages." W. Va.

Code § 21-5-3(e).

61.      "Every employee shall have a lien and all other rights and remedies for the

protection and enforcement of his or her salary or wages, as he or she would have been entitled

to had he or she rendered service therefor in the manner as last employed; except that, for the

purpose of liquidated damages, the failure shall not be deemed to continue after the date of the

filing of a petition in bankruptcy with respect to the employer if he or she is adjudicated bankrupt upon the petition."  W. Va. Code § 21-5-3(e).

       a.       The Defendants have not yet been adjudicated bankrupt upon the petition and the Plaintiffs have substantial reason to believe that the Defendants, as joint employers, are not in fact bankrupt for the reasons set forth above in this Complaint.

       b.       However, even if one or more of the Defendants is ultimately adjudicated bankrupt, liquidated damages shall nonetheless attach to the employer-contributed benefits that were not paid as indicated on the paystubs for a period of several months prior to the filing of bankruptcy.

62.      Defendants did not make payments of all wages due to the West Virginia Plaintiff and to Defendants' West Virginia employees as indicated on the paystubs.

63.      The West Virginia Plaintiff and Defendants' West Virginia employees relied upon the representations of payment made by Defendant on those paystubs.

64.      By not placing all of the Employer's and Employees' Contributions into the 401(k) account as indicated, the Defendants deprived the West Virginia Plaintiff and Defendants' West Virginia employees of the sums that they had earned and also of the interest that they would have earned on those sums had they been deposited as indicated on each paystub.

65.      "Any person whose wages have not been paid in accord with this article . . . may bring any legal action necessary to collect a claim under this article.  . . . The court in any action brought under this article may, in the event that any judgment is awarded to the plaintiff or plaintiffs, assess costs of the action, including reasonable attorney fees against the defendant."  W. Va. Code Sec. 21-5-12.

13

66.    When the Defendants terminated the West Virginia Plaintiff and Defendants'
West Virginia employees, the Defendants failed to pay the wages due as required by the next
regular payday on which the wages would otherwise have been due and payable, in violation of
W. Va. Code Sec. 21-5-4(e).

67.    The West Virginia Plaintiff and Defendants' West Virginia employees are,
therefore, entitled to recover the wages and damages due to them, including interest, in addition
to liquidated damages equivalent to two times the amount which was unpaid when due, and
attorney fees, pursuant to W. Va. Code Sec. 21-5-4(e), and 12.

### Count III – Virginia Wage Violations
### Va. Code §§ 40.1 *et seq*. and 16.1-77, 79

68.    Plaintiffs repeat and re-alleges the foregoing paragraphs.

69.     "'Employer' includes any individual, partnership, association, corporation,
business trust, or any person or groups of persons acting directly or indirectly in the interest of an
employer in relation to an employee." Va. Code § 40.1-28.9.A.

70.    "'Employee' includes any individual employed by an employer," subject to
inapplicable exceptions. Va. Code § 40.1-28.9.A.

71.    "'Wages' means legal tender of the United States or checks or drafts on banks
negotiable into cash on demand or upon acceptance at full value." Va. Code § 40.1-28.9.A.

72.    "Every employer shall pay to each of his employees wages at a rate not less than
the federal minimum wage and a training wage as prescribed by the U.S. Fair Labor Standards
Act (29 U.S.C. § 201 et seq.)." Va. Code § 40.1-28.10.

73.    "Any employer who violates the minimum wage requirements of this law shall be
liable to the employee or employees affected in the amount of the unpaid minimum wages, plus
interest at eight per centum per annum upon such unpaid wages as may be due the plaintiff, said

14

interest to be awarded from the date or dates said wages were due the employee or employees." Va. Code § 40.1-28.12.

74.    "All employers operating a business shall establish regular pay periods and rates of pay for employees except executive personnel. All such employers shall pay salaried employees at least once each month and employees paid on an hourly rate at least once every two weeks or twice in each month [subject to exceptions that are inapplicable here.]"  Va. Code § 40.1-29.A.1.

75.    "A civil action in a general district court may be brought by warrant directed to the sheriff or to any other person authorized to serve process in such county or city, requiring the person against whom the claim is asserted to appear before the court on a certain day, not exceeding sixty days from the date of service thereof, to answer the complaint of the plaintiff set out in the warrant."  Va. Code § 16.1-79.

76.    The Defendants actions of failing to pay all wages due to the Virginia Plaintiff, and to Defendants' Virginia employees, violated Va. Code §§ 40.1-28.10, 12, 29.

## Count IV – Employee Retirement Income Security Act
### Breach of Fiduciary Duty
### 29  U.S.C. § 1104, 1109

77.    Plaintiffs incorporate the preceding paragraphs by reference.

78.    Subject to inapplicable exceptions, "the terms 'employee pension benefit plan' and 'pension plan' mean any plan, fund, or program . . . established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—(i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the

contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan." 29 U.S.C. § 1002(2).

79.    The 401(k) Plan established and maintained by Defendants, for the benefit of Plaintiffs, constituted an employee pension benefit plan.

80.    The 401(k) Plan is registered with the U.S. Department of Labor as the Revelation Energy 401(k) Plan (herein "Plan" or "401(k) Plan").

81.    The administrator of that plan was Defendant Jeffery A. Hoops, II at all relevant times.

82.    The 401(k) Plan included 1,280 participants as of the end of 2017 plan year, and upon information and belief that number remained relatively constant or grew through July 1, 2019.

83.    Subject to inapplicable exceptions, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21).

84.    At all relevant times, Defendants were fiduciaries as to the employee benefits that those Defendants paid to employees. 29 U.S.C. § 1002(21).

85.    The Defendants are fiduciaries with respect to the terms of enrollment and the scope of employee benefits because they exerted control or authority over the management,

16

administration, and/or disposition of the terms or assets of that plan, and/or because they appointed other fiduciaries, to exert control with respect to those same terms.

86.     A fiduciary must discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of administering the plan. 29 U.S.C. § 1104(a)(1).

87.     By misrepresenting that certain sums were being contributed by Defendants to the Plaintiffs' 401(k) accounts, and by failing to produce summary plan descriptions regarding the benefit plan, the Defendants breached their fiduciary duty and derived a financial benefit by retaining wages and benefits that had been earned by the Plaintiffs.

88.     Defendants thus violated ERISA, 29 U.S.C. § 1104(a)(1) by breaching their fiduciary duties when they took action to increase revenue for the corporate sponsor of the plan by misrepresenting the benefits to the plan beneficiaries – thus acting not exclusively for the purpose of providing benefits to participants and their beneficiaries.

### Count V - Enforcement of the ERISA Plan
### 29  U.S.C. 1132(a)(1), (3)

89.     Plaintiffs incorporate the preceding paragraphs by reference.

90.     Plaintiffs were participants at all relevant times in the Revelation Energy 401(k) Plan, as modified and affected by written and oral representations.

91.     Defendants failed to tender to the Plaintiffs the Employer's Contributions and the Employee's Contributions under the Plan, as set forth above.

92.     This Court should order the Defendants to pay those sums that were earned by and due to the Plaintiffs under the Plan but were not provided to the Plaintiffs at the time that each paystub issued, pursuant to 29 U.S.C. 1132(a)(1), (3).

## Count VI - Violations of the WARN Act
## 29  U.S.C. 2104

93.     Plaintiffs repeat and re-allege the foregoing paragraphs.

94.     Defendants Blackjewel, L.L.C. and Revelation Energy, LLC individually, and all

Defendants jointly, constitute employers as defined by 29 U.S.C. § 2101(a)(1), for purposes of

the WARN Act, because they individually and jointly are business enterprises that either

employed one hundred (100) employees, excluding part-time employees, or employed one

hundred or more employees who in the aggregate worked at least 4,000 hours per week

(exclusive of hours of overtime).

95.     The Plaintiffs are affected employees as defined by 29 U.S.C. § 2101(a)(5), for

purposes of the WARN Act, because they are employees of one or more of the Defendants who

experienced an employment loss as a consequence of a plant closing or mass layoffs ordered by

Defendants as stated in 2012.

96.     As employers under the WARN Act, Defendants had an obligation pursuant to 29

U.S.C. § 2102 to provide written notice to the affected employees or to a representative of the

affected employees at each of the Sites at least sixty (60) days prior to the planned plant closing

or mass layoffs.

97.     Plaintiffs were laid off by their employers on or about July 1, 2019, and within a

90-day period encompassing other layoffs at the Sites.

98.     The July 1, 2019 layoffs at each such Site, either on their own or taken together

with other layoffs at each such Site within said 90-day period, each constitute a plant closing

and/or mass layoff pursuant to 29 U.S.C. § 2104(d).

99.     Plaintiffs and Defendants' other aggrieved and affected employees expect to

experience an employment loss because by being separated from work, without cause, for a

period exceeding six months, as a result of the aforementioned layoff, which constituted a plant closing at each such Site.

100.    Alternatively, the Plaintiffs and Defendants' other aggrieved and affected employees at each such Site experienced an employment loss as a result of the aforementioned layoff, and as a consequence of which the Plaintiffs and Defendants' other affected employees were laid off for a period to exceed 6 months, and which constitutes a mass layoff.

101.    Defendants failed to provide a written notice to Plaintiffs, or to Defendants' other affected employees at the Sites, prior to closing the plant or carrying out the mass layoff beginning on or about July 1, 2019.

102.    As a result of the plant closing or mass layoffs carried out on or about July 1, 2019, among other dates known and unknown within a 90-day period encompassing July 1, 2019, at least 50 of Defendants' employees, excluding part-time employees, and including Plaintiffs, who collectively comprised more than thirty-three percent (33%) of the employees at each of the Sites, experienced an involuntary, continuous, and ongoing employment loss that is anticipated to last for a period well in excess of six months.

**Class Allegations – Bankruptcy Rule 7023 (a) and (b)**

103.    Plaintiff repeats and re-alleges paragraphs the foregoing paragraphs.

104.    Pursuant to Fed. R. Civ. P. 23 (a)-(b), as incorporated by Fed. R. Bankr. P. 7023, Plaintiff brings this class action on behalf of the other similarly situated employees (hereinafter "Class Members") who were not paid wages and benefits, and who were laid off on or about July 1, 2019, as set forth above.

105.    The proposed class would be defined as: All full-time employees who were laid
off from full-time employment by Blackjewel, L.L.C., Revelation Energy, LLC, Lexington Coal
Co., LLC, and/or Jeff Hoops, Sr. on or about July 1, 2019.

106.    Proposed subclasses would be broken down by state:

      a.   All full-time employees who were laid off from full-time employment in
West Virginia by Blackjewel, L.L.C., Revelation Energy, LLC, Lexington
Coal Co., LLC, and/or Jeff Hoops, Sr. on or about July 1, 2019.

      b.   All full-time employees who were laid off from full-time employment in
Kentucky by Blackjewel, L.L.C., Revelation Energy, LLC, Lexington
Coal Co., LLC, and/or Jeff Hoops, Sr. on or about July 1, 2019.

      c.   All full-time employees who were laid off from full-time employment in
Virginia by Blackjewel, L.L.C., Revelation Energy, LLC, Lexington Coal
Co., LLC, and/or Jeff Hoops, Sr. on or about July 1, 2019.

107.    The Class Members are so numerous that joinder of all Class Members is
impracticable because it is estimated that Defendants laid off or terminated at least
approximately 1,100 employees in violation of the applicable statutes governing payment of
wages and benefits as set forth in this Complaint.

108.    There are questions of law or fact common to the Class Members that
predominate over any questions affecting only individual Class Members.  The principal
questions in this case are whether the Defendants' failures to pay wages and benefits violated the
applicable wage laws of the relevant states, whether their failure to pay benefits and provide

summary plan descriptions violated the Employee Retirement Income Security Act, and whether their failure to provide notice of the 2019 layoffs violated the WARN Act.

109.    The claims and defenses of the Plaintiffs are typical of the claims or defenses of the Class Members as a whole because the Class Members are similarly affected by Defendants' wrongful conduct in violation of the wage laws and the applicable federal laws (ERISA and the WARN Act) and they possess the class representatives possess the same legal and equitable remedies as the other Class Members.

110.    The Plaintiffs will fairly and adequately protect the interest of the Class Members because Plaintiffs have demonstrated their commitment to this claim by preserving their work records, and because Plaintiffs are represented by counsel who are competent and experienced, including experienced in bringing class action litigation under ERISA and the WARN Act involving coal-mining layoff in the Appalachian Region.

111.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because (a) joinder of all Class Members is impracticable, (b) the Class Members are likely unemployed and not in a position to retain counsel, and (c) each individual Class Member has suffered damages that are merely modest.  Therefore, there will be no difficulty in the management of this class action and concentration of the claims in this forum will promote judicial economy.

## **Damages and Relief Requested**

112.    Pursuant to Fed. R. Civ. P. 23(a), (b), & (c), and 29 U.S.C. § 2104(a)(5), and other applicable law, Plaintiffs request that the Court provide the following equitable and legal relief:

a.  An allowed claim against the Debtor Defendants in favor of the Plaintiffs and Class Members in the following amounts: wages and benefits due but unpaid as set forth above; up to the maximum amount of statutory and liquidated damages, including interest compounded at an appropriate rate and frequency, pursuant to Ky. Rev. Stat. Section 337.385(1), W. Va. Code 21-5-4, 12, Va. Code 40.1-28, 29 U.S.C. 1132(a), (c), (ERISA), 29 U.S.C. §§ 2104(a)(1) & (2) (WARN Act).

b.  The Court designate the named Plaintiffs as class representatives as permitted by Rule 23 and 29 U.S.C. § 2104(a)(5).

c.  The Court appoint the undersigned attorneys as class counsel pursuant to Rule 23.

d.  An allowed administrative priority claim against the Debtor Defendants under 11 U.S.C. §  503 for the reasonable attorneys' fees, litigation expenses, and other costs that Plaintiffs incur in pursuing this action as authorized by Ky. Rev. Stat. § 337.020, W.Va. Code § 21-5-12, Va. Code, 29 U.S.C. § 1132, and 29 U.S.C. § 2104(a)(6).

e.  A declaration of relief from the stay to pursue Count VIII (ERISA Claim for Failure to Provide Notice of COBRA Rights) against Jeffery A. Hoops II in his capacity as plan administrator.

f.  Any such other relief as it may deem just and proper.

**Plaintiffs,**
**Shawn Abner, et al.**
**By counsel:**


 \s\ Samuel B. Petsonk_____
Samuel B. Petsonk (WVSB # 12-418)

Petsonk PLLC
101 Ramey Court
PO Box 1045
Beckley, WV 25802
(304 )900-3171 (phone)
(304) 986-4633 (fax)
sam@petsonk.com

　　/s/ Bren J. Pomponio
Bren J. Pomponio (WVSB #7774 )
Clint Carte (WVSB #12054)
Mountain State Justice, Inc.
1217 Quarrier Street
Charleston, WV 25301
(304) 344-3144
(304) 344-3145 (fax)
bren@msjlaw.org
clint@msjlaw.org