## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| In re:<br><br>**BLACKJEWEL, L.L.C.,** *et al.*<br>                      **Debtors**<br>-------------------------------------------------------<br>**DAVID ENGELBRECHT, JOSIAH WILLIAMSON, GREGORY MEFFORD on behalf of themselves and all others similarly situated,**<br><br>                  **Plaintiffs,**<br><br>**v.**<br><br>**BLACKJEWEL, L.L.C.,**<br><br><br>                  **Defendants.**<br>------------------------------------------------------- | **Chapter 11**<br>**Case No. 19-bk-30289**<br>**(Jointly Administered)**<br><br><br><br>**Adversary Proceeding**<br>**No. 3:19-ap-03002** |
| In re:<br><br>**BLACKJEWEL, L.L.C.,** *et al.*<br>                      **Debtors**<br>-------------------------------------------------------<br>**SHAWN ABNER, JACOB HELTON, AND BILLY HATTON on behalf of themselves and all others similarly situated,**<br><br>                  **Plaintiffs,**<br><br>**v.**<br><br>**BLACKJEWEL, L.L.C.,  REVELATION ENERGY, LLC, LEXINGTON COAL CO., LLC, JEFF HOOPS, SR., JEFFERS A. HOOPS, II,**<br><br>                  **Defendants.**<br>------------------------------------------------------- | **Chapter 11**<br>**Case No. 19-bk-30289**<br>**(Jointly Administered)**<br><br><br>**Adversary Proceeding**<br>**No. 3:19-ap-03003** |

**NOTICE OF HEARING ON JOINT MOTION AND MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANTS AND PROPOSED CLASS REPRESENTATIVES,
PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE AND BANKRUPTCY
RULES 7023 AND 9019 TO: (I) APPROVE THE SETTLEMENT AGREEMENT
PURSUANT TO BANKRUPTCY RULE 9019, (II) PRELIMINARILY APPROVE THE
SETTLEMENT AGREEMENT PURSUANT TO BANKRUPTCY RULE 7023, (III)
CERTIFY THE CLASS FOR SETTLEMENT PURPOSES, INCLUDING THE
APPOINTMENT OF CLASS COUNSEL AND THE CLASS REPRESENTATIVES, (IV)
APPROVE THE FORM AND MANNER OF NOTICE TO CLASS MEMBERS OF THE
SETTLEMENT, (V) SCHEDULE A FAIRNESS HEARING TO CONSIDER FINAL
APPROVAL OF THE SETTLEMENT AGREEMENT, (VI) FINALLY APPROVE THE
SETTLEMENT AGREEMENT FOLLOWING THE FAIRNESS HEARING, AND (VII)
<u>GRANT RELATED RELIEF</u>**

  **PLEASE TAKE NOTICE** that pursuant to the *Order Establishing Certain Notice and Case Management Procedures* [ECF No. 2217] (the "<u>Case Management Order</u>") that a hearing (the "<u>Hearing</u>") to consider the *Joint Motion and Memorandum of Law in Support of Defendants and Proposed Class Representatives, Pursuant to Section 105 of the Bankruptcy Code and Bankruptcy Rules 7023 and 9019 to: (I) Approve the Settlement Agreement Pursuant to Bankruptcy Rule 9019, (II) Preliminarily Approve the Settlement Agreement Pursuant to Bankruptcy Rule 7023, (III) Certify the Class for Settlement Purposes, Including the Appointment of Class Counsel and the Class Representatives, (IV) Approve the Form and Manner of Notice to Class Members of the Settlement, (V) Schedule a Fairness Hearing to Consider Final Approval of the Settlement Agreement, (VI) Finally Approve The Settlement Agreement Following The Fairness Hearing, And (Vii) Grant Related Relief* (the "<u>Motion</u>") filed on September 1, 2020 in the above captioned bankruptcy cases shall be held before the United States Bankruptcy Court for the Southern District of West Virginia (the "<u>Bankruptcy Court</u>") on October 9, 2020 at 9:30 a.m. (Prevailing Eastern Time).

  **PLEASE TAKE FURTHER NOTICE** that the Hearing will be conducted pursuant to the procedures in the Case Management Order as may be modified by further orders of the Court from time to time. **<u>Any party wishing to be heard must comply with the terms and provisions of the Case Management Order.</u>**

  **PLEASE TAKE FURTHER NOTICE** that responses or objections, if any, to the relief requested in the Motion must be in writing and conform to the Federal Rules of Bankruptcy Procedure, the Local Rules of the Bankruptcy Court, and the procedures described in the Case Management Order. Any responses or objections shall be served in an accordance with the Case Management Order on the following parties: (i) counsel for the Debtors, Squire Patton Boggs (US) LLP, 201 E. Fourth Street, Suite 1900, Cincinnati, Ohio 45202, Attn: Stephen D. Lerner (<u>stephen.lerner@squirepb.com</u>), Nava Hazan (<u>nava.hazan@squirepb.com</u>) and Travis A. McRoberts (<u>travis.mcroberts@squirepb.com</u>); and (ii) local counsel for the Debtors, Supple Law Office, PLLC, 801 Viand Street, Point Pleasant, West Virginia 25550, Attn: Joe M. Supple (<u>joe.supple@supplelawoffice.com</u>).

Any response must be filed and served no later than on **<u>October 2, 2020 at 11:59 p.m. (Prevailing Eastern Time) (the "Objection Deadline")</u>**. If you or your attorney do not take these steps, the

Court may decide that you do not oppose the relief sought in the Motion and may enter an order granting that relief.

Respectfully submitted, this 1st day of September 2020.

**SUPPLE LAW OFFICE, PLLC**

Joe M. Supple, Bar. No. 8013
801 Viand St.
Point Pleasant, WV 25550
Telephone: 304.675.6249
Facsimile: 304.675.4372
joe.supple@supplelawoffice.com

– and –

**SQUIRE PATTON BOGGS (US) LLP**

*/s/ Stephen D. Lerner*
Stephen D. Lerner (admitted *pro hac vice*)
Nava Hazan (admitted *pro hac vice*)
Travis A. McRoberts  (admitted *pro hac vice*)
201 E. Fourth St., Suite 1900
Cincinnati, Ohio 45202
Telephone: 513.361.1200
Facsimile: 513.361.1201
stephen.lerner@squirepb.com
nava.hazan@squirepb.com
travis.mcroberts@squirepb.com

*Co-Counsel to the Debtors and
Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**

---

| | |
|---|---|
| In re:<br><br>**BLACKJEWEL, L.L.C.**, *et al.*<br>                          **Debtors**<br>-------------------------------------------------------<br>**DAVID ENGELBRECHT, JOSIAH**<br>**WILLIAMSON, GREGORY MEFFORD on behalf**<br>**of themselves and all others similarly situated,**<br><br>                    **Plaintiffs,**<br><br>**v.**<br><br>**BLACKJEWEL, L.L.C.,**<br><br><br>                    **Defendants.**<br>------------------------------------------------------- | **Chapter 11**<br>**Case No. 19-bk-30289**<br>**(Jointly Administered)**<br><br><br><br>**Adversary Proceeding**<br>**No. 3:19-ap-03002** |
| In re:<br><br>**BLACKJEWEL, L.L.C.**, *et al.*<br>                          **Debtors**<br>-------------------------------------------------------<br>**SHAWN ABNER, JACOB HELTON, AND BILLY**<br>**HATTON on behalf of themselves and all others**<br>**similarly situated,**<br><br>                    **Plaintiffs,**<br><br>**v.**<br><br>**BLACKJEWEL, L.L.C.,  REVELATION**<br>**ENERGY, LLC, LEXINGTON COAL CO., LLC,**<br>**JEFF HOOPS, SR., JEFFERS A. HOOPS, II,**<br><br>                    **Defendants.**<br>------------------------------------------------------- | **Chapter 11**<br>**Case No. 19-bk-30289**<br>**(Jointly Administered)**<br><br><br>**Adversary Proceeding**<br>**No. 3:19-ap-03003** |

**JOINT MOTION AND MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS AND PROPOSED CLASS REPRESENTATIVES, PURSUANT TO
SECTION 105 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 7023 AND
9019 TO: (I) APPROVE THE SETTLEMENT AGREEMENT PURSUANT TO
BANKRUPTCY RULE 9019, (II) PRELIMINARILY APPROVE THE SETTLEMENT
AGREEMENT PURSUANT TO BANKRUPTCY RULE 7023, (III) CERTIFY THE
CLASS FOR SETTLEMENT PURPOSES, INCLUDING THE APPOINTMENT OF
CLASS COUNSEL AND THE CLASS REPRESENTATIVES,  (IV) APPROVE THE
FORM AND MANNER OF NOTICE TO CLASS MEMBERS OF THE SETTLEMENT,
(V) SCHEDULE A FAIRNESS HEARING TO CONSIDER FINAL APPROVAL OF THE
SETTLEMENT AGREEMENT, (VI) FINALLY APPROVE THE SETTLEMENT
AGREEMENT FOLLOWING THE FAIRNESS HEARING, AND (VII) GRANT
<u>RELATED RELIEF</u>**

Plaintiffs David Engelbrecht, Josiah Williamson, Gregory Mefford, Shawn Abner, Jacob

Helton, and Billy Hatton (the "<u>Plaintiffs</u>"), together with Blackjewel, L.L.C. and Revelation

Energy, LLC (together, the "<u>Debtors</u>" or "<u>Debtor-Defendants</u>") and Lexington Coal Co., LLC,

Jeff Hoops, Sr., and Jeffery A. Hoops, II (the "<u>Non-Debtor Defendants</u>" and, collectively with the

Debtor-Defendants, the "<u>Defendants</u>" and, together with the Plaintiffs, the "<u>Parties</u>") by and

through their respective counsel, hereby jointly submit this Joint Motion and Memorandum of Law

in Support, pursuant to section 105 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"),

Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 23

of the Federal Rules of Civil Procedure (the "<u>Civil Rules</u>"), made applicable hereto by Bankruptcy

Rule 7023, for the entry of an Order: (1) approving the Settlement, Release, and Allowance of

Claim Agreement (the "<u>Settlement Agreement</u>");[2] (2) preliminarily approving the Settlement

Agreement pursuant to Bankruptcy Rule 7023; (3) certifying the WARN Class for settlement

purposes only, including the appointment of Lankenau & Miller, LLP, The Gardner Firm, P.C.,

Petsonk PLLC,  Mountain State Justice, Inc. and Pillersdorf, DeRossett and Lane Law Offices as

Class Counsel and David Engelbrecht, Josiah Williamson, Gregory Mefford, Shawn Abner, Jacob

---

[2] A copy of the Settlement Agreement is attached hereto as <u>Exhibit A</u>.  Unless otherwise defined herein, capitalized
terms herein shall have the meaning provided to them in the Settlement Agreement.

Helton, and Billy Hatton as Class Representatives; (4) approving the form and manner of notice

of the Settlement to the members of the Class (the "Class Notice"); (5) scheduling a fairness

hearing to consider final approval of the Settlement Agreement (the "Fairness Hearing"); (6)

finally approving the Settlement Agreement following the fairness hearing (the "Final Settlement

Order"); and (7) granting related relief (the "Joint Motion").  In support of the Joint Motion, the

Parties respectfully state:

## INTRODUCTION

1.      This Court should approve the Settlement Agreement.  The Plaintiffs have sued the

Defendants in the above-captioned adversary proceedings (together, the "WARN Action") for

allegedly failing to provide notice as required by the Worker Adjustment and Retraining Act, 29

U.S.C. §§ 2101, et seq. (the "WARN Act"), before ordering alleged mass layoffs and/or plant

closings on or about July 1, 2019 and thereafter, and for other wage and hour and other

employment and employee benefits-related claims.  In exchange for a full release of any claims

under the WARN Act and other claims asserted in the WARN Action, (i) the Debtor-Defendants

have agreed that the Class Members will have an allowed priority claim pursuant to 11 U.S.C. §

507(a)(4) and (a)(5) of the Bankruptcy Code, as further described herein and (ii) the Non-Debtor

Defendants have agreed to make a cash payment of $125,000, which will be distributed from a

Qualified Settlement Fund established by the Class Counsel in accordance with the terms of the

Settlement Agreement.

2.      The Parties believe that the Settlement Agreement is fair and reasonable and that

further litigation of the WARN Action would be protracted and expensive, and its outcome

uncertain.  Indeed, Class Counsel contends that the events that led to the failure of the Debtors'

business were foreseen and/or foreseeable and that none of the WARN Act's affirmative defenses

3

would provide an exception to the Defendants' liability under the statute.  The Debtors and the Non-Debtor Defendants, however, dispute that the failure of the Debtors' business was foreseen and/or foreseeable and believes that several affirmative defenses under the WARN Act would be available to them.  Thus, a trial on the merits would require both sides to engage in extensive expert and non-expert discovery at significant expense, with inherently uncertain results at trial.

3.      In light of these factors, the Parties have determined that the terms of the Settlement Agreement are well within the range of reasonableness.  Accordingly, the Parties respectfully submit that the Bankruptcy Court should approve the Settlement under Bankruptcy Rule 9019. For the same reasons, the Settlement Agreement is also fair and reasonable to the Class Members.

4.      It is also appropriate to certify the Class for settlement purposes and appoint Class Counsel.  As set forth below, for purposes of the Settlement, the Parties agree that the Class meets all of the requirements of Civil Rule 23 and that Class Counsel is competent and experienced.

5.      The Parties request a two-step approval process to facilitate notice to the Class Members.  After the preliminary approval of the Settlement Agreement and the form of the Class Notice, Class Counsel will provide the Class Notice to each Class Member, which describes the Settlement Agreement, and informs the Class Members of their right to opt-out of the Class or object to the Settlement Agreement, and of the deadlines for opting-out and/or objecting.

6.      After service of the Class Notice, the Parties request that the Bankruptcy Court hold a Fairness Hearing within sixty (60) days of entry of the preliminary approval order, at which time the Parties will request final approval of the Settlement Agreement.

7.      Based on the foregoing, and as set forth more fully below, the Parties submit that the Bankruptcy Court should approve the Settlement Agreement and the procedures proposed in this Joint Motion.

## JURISDICTION

8.      The United States Bankruptcy Court for the Southern District of West Virginia (the "Bankruptcy Court") has jurisdiction over the Joint Motion under 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are section 105 of the Bankruptcy Code, and Bankruptcy Rules 7023 and 9019.

## BACKGROUND

9.      On July 1, 2019 and July 24, 2019 (the "Petition Date"), the Debtors and certain affiliates initiated the Bankruptcy Case by filing voluntary petitions for relief under chapter 11 of title 11 of the Bankruptcy Code.  Prior to the Petition Date, the Debtors employed approximately 1,700 employees, both hourly and salaried, including the Class Members, in their business operations.

10.      Plaintiffs contend that, on or about July 1, 2019, and thereafter, the Debtors terminated the Plaintiffs and most of the workforce who worked at the Debtors' facilities in the Central Appalachian Coal Basin in West Virginia, Virginia and Kentucky (the "Eastern Division," encompassing approximately 1,100 employees) and in the Powder River Basin in Wyoming (the "Western Division," encompassing approximately 600 employees).  The Plaintiffs allege that, on or about July 1, 2019, and thereafter, the Debtors terminated the employment of Plaintiffs and more than half of their employees, without providing the notice required under the WARN Act.

11.      On July 9, 2019 and thereafter, the Plaintiffs filed their Class Action Adversary Proceeding Complaints[3] (the "WARN Action") against the Defendants, in which the Plaintiffs

---

[3] The class WARN Act adversary proceedings which have been consolidated for the purposes of the Settlement are: *David Engelbrecht, Josiah Williamson and Gregory Mefford, on their own behalf and on behalf of all other persons similarly situated v. Blackjewel, LLC*; Adversary Proceeding No. 19-ap-3002 and *Shawn Abner, Jacob Helton and*

asserted a class action claim under the WARN Act alleging that the Defendants as a "single employer" violated the WARN Act by implementing alleged plant closings or mass layoffs, without providing sixty (60) days advance written notice thereof.  The Class Representatives further asserted that, as a consequence of this alleged failure, the Class Members have a claim against the Defendants for damages for the alleged sixty (60) day violation period.  The WARN Action also includes wage and hour and other employment and employee benefits-related claims for the putative class members.  Finally, the WARN Action asserts that the alleged damages are entitled to priority status pursuant to sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code up to the statutory maximum amount per claimant of $13,650.00 per employee pursuant to 11 U.S.C. § 507(a)(4) of the Bankruptcy Code (the "Statutory Cap").

12.    The Defendants deny these allegations and further deny that the Plaintiffs are entitled to any relief from them under any claims asserted in the WARN Action.

13.    On September 20, 2019, the Bankruptcy Court entered an order for the Parties to commence mediation with Magistrate Judge Omar Aboulhosn [D.I. 17, Case No. 19-ap-03002].

14.    On October 25, 2019, the Debtors provided the Plaintiffs with relevant wage information concerning the hourly and salaried employees whose employment Plaintiffs contend was terminated by the Debtors.

15.    On November 4, 2019, the parties mediated this matter before Magistrate Judge Omar Aboulhosn and although the WARN Action was not resolved at mediation, the Parties have been working since that date toward a resolution of this matter.  Following extended settlement negotiations, conducted in good faith and at arms' length, the Parties reached agreement on a

---

*Billy Hatton individually and on behalf of others similarly situated v. Blackjewel, LLC, Revelation Energy, LLC, Lexington Coal Co., LLC, Jeff Hoops, Sr., Jeffery A. Hoops, II*, Adversary Proceeding No. 19-ap-03003.

compromise that will resolve the WARN Action, subject to the Bankruptcy Court approval, according to the terms forth therein.

## ESSENTIAL TERMS OF THE PROPOSED SETTLEMENT

16.    The Parties have reached an agreement, subject to Bankruptcy Court approval, the terms of which have been set out in the Settlement Agreement.[4]  The Settlement Agreement provides that, upon the Effective Date, the Class shall be awarded (a) an allowed priority claim jointly and severally against the Debtors, as set forth on Schedule 1 to the Settlement Agreement, pursuant to 11 U.S.C. § 507(a)(4) and (a)(5), equal to sixty percent (60%) of sixty (60) days' wages and benefits for each Class member, in the total aggregate amount of $14,630,825.63, and an allowed priority wage claim under 11 U.S.C. § 507(a)(4) in the aggregate amount of $2,711,494.11 for up to eight (8) days of pay for each Class Member in resolution of their wage claims (together, the "Allowed Bankruptcy WARN and Wage Claims"), which amount shall be subject to the statutory cap of $13,650.00 per employee pursuant to 11 U.S.C. § 507(a)(4) (the "Statutory Cap");[5] and (b) a cash payment (the "Cash Payment") from the Non-Debtor Defendants totaling $125,000 ($75,000 to be paid by Jeff Hoops, Sr. and Jeffery A. Hoops, II, jointly and severally, with the remaining $50,000 to be paid by Lexington Coal Co., LLC).

17.    The distributions from the Debtors' estates (the "Estates") on account of the Allowed Bankruptcy WARN and Wage Claims (the "Estates Distribution Payments") will be made by the Debtors in accordance with the priority scheme established by the Bankruptcy Code to a qualified settlement fund to be established by Class Counsel in conformity with Internal Revenue Code § 468B (the "Qualified Settlement Fund") pursuant to written instructions to be provided by

---

[4] This Joint Motion contains a summary of certain provisions of the Settlement Agreement.  In the event of any conflict, the Settlement Agreement itself shall govern over any description contained in this Joint Motion.
[5] To the extent any Class Members' Allowed Bankruptcy WARN and Wage Claims exceed the Statutory Cap, the balance shall be deemed a general unsecured claim.

Class Counsel. The Class acknowledges that the Allowed Bankruptcy WARN and Wage Claims is an allowed claim to be paid in accordance with the priority scheme established by the Bankruptcy Code and that such claim may or may not be paid depending on the distributions available to creditors of the Debtors' Estates and may not be paid or funded in full.

18.     The Cash Payment shall be made via wire transfer by the Non-Debtor Defendants within five (5) business days of the Effective Date to the Qualified Settlement Fund pursuant to written instructions to be provided by Class Counsel.  The name of the Qualified Settlement Fund shall be *Engelbrecht v. Blackjewel QSF*, and Class Counsel or the Administrator of the Qualified Settlement Fund shall provide the Debtors and the Non-Debtor Defendants with a W-9 form for the Qualified Settlement Fund to enable the Estates Distribution Payments and the Cash Payment, respectively to the Qualified Settlement Fund.  The other essential terms of the Settlement Agreement are as follows:

    i.    A class will be certified for settlement purposes only (the "Class").  The Class will be comprised of all persons who were employed by the Debtors at facilities located in the Eastern Division and the Western Division and who ceased working for the Debtors on or after July 1, 2019 solely, and who do not file a timely request to opt out of the Class.  The Class excludes the Debtors' employees who were brought back to work by the Debtors between the dates of July 1, 2019 and November 4, 2019.

    ii.    The Debtors represent that, to the best of their knowledge, information and belief and based solely upon the Debtors' books and records, all of the former employees (along with their last known addresses and wage information) who are Class Members are listed on Schedule 1 to the Settlement Agreement.

    iii.    Lankenau & Miller, LLP, The Gardner Firm, P.C., Petsonk PLLC, Mountain State Justice, Inc. and Pillersdorf, DeRossett and Lane Law Offices shall be appointed class counsel ("Class Counsel") for the Class created under the Settlement Agreement.

    iv.    David Engelbrecht, Josiah Williamson, Gregory Mefford, Shawn Abner, Jacob Helton, and Billy Hatton shall be appointed Class Representatives for the Class created under the Settlement Agreement.

8

v.   The Settlement Agreement shall become effective upon the date on which the Final Settlement Order becomes a "Final Order" (the "<u>Effective Date</u>").  The Final Settlement Order shall become a Final Order when the time for taking an appeal has expired or, in the event an appeal has been taken, the day the Final Settlement Order has been affirmed with no further right of appeal.

vi.   The Debtors agree to provide Class Counsel with updates every six (6) months as to (i) the amount of funds in the Debtors' Estates as of such date, (ii) the amount of outstanding claims asserted by creditors holding secured and administrative claims, and (iii) any potential recovery the Estates may obtain as of such date.

vii.   The Plaintiffs acknowledge that the payment of the Allowed Bankruptcy WARN and Wage Claims will not be made as of the effective date of a proposed plan, if any, but will be paid if and when money comes to the Estates in accordance with the priority scheme established by the Bankruptcy Code depending on numerous factors and circumstances in the Bankruptcy Case. The Plaintiffs also agreed that they will support any plan proposed by the Debtors.

viii.   Class Counsel shall act as the trustee of the Qualified Settlement Fund.  Class Counsel shall cause each Class Member's distribution to be paid from the Qualified Settlement Fund, and shall transmit distributions via first class U.S. Mail to the Class Members at their last known address as indicated on Schedule 1 to the Settlement Agreement (or to such other address as the Class Members may indicate to Class Counsel or which Class Counsel may locate), in accordance with applicable law.  By accepting his or her portion of the Settlement Fund, each Class Member agrees that he or she will be solely responsible for any and all tax liabilities stemming from the payment of his or her claim under the Settlement Agreement. The Debtors and Plaintiffs agree that the Estates Distribution Payments shall be the only payments to be made by the Debtors under this Settlement Agreement.  The Non-Debtor Defendants and Plaintiffs agree that the Cash Payment shall be the only payment to be made by the Non-Debtor Defendants under this Settlement Agreement. Under no circumstances shall the Debtors or their Estates or Non-Debtor Defendants be required under the Settlement to pay any sums or other consideration in addition to the Estates Distribution Payments or Cash Payment, respectively, for any purpose whatsoever.

ix.   In the event the amount of the Estates Distribution Payments is sufficient to make a full payment on the Allowed Bankruptcy WARN and Wage Claims, the total amount distributed to each Class Member on the Allowed Bankruptcy WARN and Wage Claims shall equal the amount listed on Schedule 1 to the Settlement Agreement for those claims. In the event the amount of the Allowed Bankruptcy WARN and Wage Claims is greater than the Estates Distribution Payments, the Class Members' distributions shall be reduced on a *pro rata* basis so all Class Members receive an equal percentage of the Estates Distribution Payments. For the avoidance of doubt, the Class Counsel's Fees, Class Counsel's Expenses and the Class Representative Service Payments are payable solely out of the Qualified Settlement Fund, consistent with the terms of the Settlement Agreement, and such fees, expenses and payments are included in the amount of the Allowed Bankruptcy WARN and Wage Claims as set forth in Schedule 1 to the Settlement Agreement and not in addition to such amount.

9

x.    Upon the Effective Date, any and all individual claims asserted by Class Members against the Debtors related to the claims set forth in the WARN Action shall be deemed satisfied and expunged, without need for further court order, and payment on account of such claims shall be limited solely to the Estates Distribution Payments and Cash Payment.  Proofs of claim filed by individuals who choose to timely opt-out of the WARN Class shall be unaffected by the release contained in the Settlement.

xi.   Class Counsel shall be responsible for the production and mailing of all notices required to be provided to the Class Members (the "Class Notice"), the cost of which shall be paid solely from the Qualified Settlement Fund.  The Class Notice shall be mailed within five (5) business days following entry of the order certifying the Class for settlement purposes and preliminarily approving the Settlement Agreement.  The address of Class Counsel will be used as the return address for the Class Notice, and Class Counsel will respond to all inquiries of the Class arising from or related to the Settlement.  Class Counsel may retain the services of a settlement administrator (the "Administrator") to perform this service and other services related to the administration of the Qualified Settlement Fund, and the costs of the Administrator acting in this capacity, if applicable, may be deducted from the Qualified Settlement Fund.

xii.  The Class Representatives shall receive an aggregate one-time payment from the first distribution from the Qualified Settlement Fund of $30,000, to be allocated as follows: $5,000 each to David Engelbrecht, Josiah Williamson, Gregory Mefford, Shawn Abner, Jacob Helton, and Billy Hatton for their service in this matter (together, the "Class Representative Service Payments").  Class Counsel shall distribute this payment to the Class Representatives, in addition to each Class Representative's individualized disbursements on account of the Settlement payments contemplated therein.[6]  Class Counsel's Fees will not be deducted from the Class Representative Service Payments.

xiii. Class Counsel is entitled to attorneys' fees ("Class Counsel's Fees") in the amount of one-third (1/3) of each distribution on the Estates Distribution Payments and Cash Payment, net of the one-time $30,000 aggregate payment for Class Representative Service Payments.  In addition, Class Counsel is entitled to its litigation expenses (including costs associated with the production and mailing of the Class Notice and the administration of the Settlement, estimated to be approximately $75,000) ("Class Counsel's Expenses").  Class Counsel's Fees and Class Counsel's Expenses, as well as the Representative Service Payments, shall be paid exclusively by the Qualified Settlement Fund.  Class Counsel's Fees and Class Counsel's Expenses shall be payment in full for Class Counsel's work and expenses in connection with this matter.

xiv.  Class Counsel shall send the Class Notice by first class mail to each Class Member's last known address and the Class Notice shall state:

a.    That each Class Member has the right to opt out of the Class and preserve all of his or her rights, if any, against the Debtors and Non-Debtor Defendants, including the Released Claims (all such persons timely electing

---

[6] For avoidance of doubt, the Class Representative Service Payments shall have no affect on the priority amounts available to the Class Representatives for their individualized Allowed Bankruptcy WARN and Wage Claims.

to opt out of the Class, the "Opt-Outs");

b.   That the Settlement shall become effective only if it is finally approved by the Bankruptcy Court under Rules 7023 and Rule 9019 of the Federal Rules of Bankruptcy Procedure, and Rule 23 of the Federal Rules of Civil Procedure, as made applicable by Rule 7023 of the Federal Rules of Bankruptcy Procedure;

c.   That, if so approved, the Settlement shall be effective as to all Class Members who did not timely elect to opt out of the Class;

d.   The projected net dollar amounts such Class Member would receive under the Settlement, as shown on Schedule 1, assuming full payments of the Estates Distribution Payments and Cash Payment;

e.   That the Estates Distribution Payments may or may not equal the Allowed Bankruptcy WARN and Wage Claims depending on various factors and circumstances in the Bankruptcy Case;

f.   That each Class Member who does not opt out has the right to object to the Settlement either in person or through counsel and be heard at the Fairness Hearing;

g.   That all Released Claims of a Class Member (other than claims with respect to amounts to be paid under the terms of the Settlement) shall be waived without need for further court order and any individual claim of Class Members against the Debtors related to or based upon the WARN Act or any comparable state and local laws shall be deemed satisfied and expunged from the applicable claims registers maintained by the Bankruptcy Court, without need for further court order and that no person, including the Class Member, shall be entitled to any further distribution thereon.

xv.   The Settlement Agreement shall become effective only if it is approved by a final order entered by the Bankruptcy Court.

## **RELIEF REQUESTED**

19.   By this Joint Motion, the Parties request that the Bankruptcy Court enter orders: (1) approving the Settlement Agreement pursuant to Bankruptcy Rule 9019; (2) preliminarily approving the Settlement Agreement pursuant to Bankruptcy Rule 7023; (3) certifying the WARN Class for settlement purposes only, including the appointment of Lankenau & Miller, LLP, The Gardner Firm, P.C., Petsonk PLLC, Mountain State Justice, Inc. and Pillersdorf, DeRossett and Lane Law Offices as Class Counsel and David Engelbrecht, Josiah Williamson, Gregory Mefford,

11

Shawn Abner, Jacob Helton, and Billy Hatton as Class Representatives; (4) approving the form

and manner of the Class Notice; (5) scheduling the Fairness Hearing; (6) finally approving the

Settlement Agreement following the Fairness Hearing; and (7) granting related relief.

## BASIS FOR RELIEF REQUESTED

### A.    The Bankruptcy Court Should Approve the Settlement Pursuant to Rule 9019 of the Bankruptcy Rules.

20.    This Court has found that "[i]n determining whether to approve a

settlement, the bankruptcy court must 'assess and balance the value of the claim that is being

compromised against the value to the estate of the acceptance of the compromise proposal.'" *In re*

*Cazon, LLC*, 2016 Bankr. LEXIS 2722 *8 (Bankr. S.D. W. Va. 2016) (citing *Myers v. Martin (In*

*re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996)).  Bankruptcy Rule 9019 authorizes a bankruptcy court

to approve a compromise or settlement after notice and a hearing and section 105 of the Bankruptcy

Code empowers a court to issue any order that is "necessary or appropriate."  *See* 11 U.S.C. §

105(a) and Fed. R. Bankr. P. 9019(a).

21.    "[T]he authority to approve a compromise settlement is within the sound discretion

of the bankruptcy court."  *In re Key3Media Group, Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005);

*see also, In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).  When exercising such discretion,

the bankruptcy court must determine whether the compromise is "fair, reasonable, and in the best

interest [sic] of the estate."  *Key3Media,* 336 B.R. 87, 92; *see also, Fry's Metals, Inc. v. Gibbons*

*(In re RFE Industries, Inc.)*, 283 F.3d 159, 165 (3d Cir. 2002); *In re Louise's, Inc.*, 211 B.R. at

801; *In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 249 (Bankr. D. Del. 1998).

22.    The bankruptcy court is not required to determine that the proposed settlement is

the best possible compromise.  *In re Key3Media Group*, 336 B.R. at 92-93 (citing *In re Coram*

*Healthcare Corp.,* 315 B.R. 321, 329 (Bankr. D. Del. 2004)).  Rather, the Settlement should be

approved as long as it does not fall below the lowest point in the range of reasonableness. *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983). In this respect, it is not required for the court to consider the information necessary to resolve the factual dispute, nor is it necessary for the bankruptcy court to "conclusively determine claims subject to a compromise." *Key3Media Group*, 336 B.R. at 92 (quoting *In re Martin*, 212 B.R. 316, 319 (BAP 8th Cir. B.A.P. 1997)).

**B.      Standards for Approval of the Settlement Agreement.**

23.      To determine if a settlement can be approved, courts generally consider the following four factors: 1) the probability of success in litigation; 2) the likely difficulties in collection; 3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and 4) the paramount interests of creditors. *In re Cazon, LLC*, 2016 Bankr. LEXIS 2722 at *8 (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-425, 88 S. Ct. 1157, 20 L. Ed. 2d 1 (1968); *In re Martin*, 91 F.3d at 393; *Van Wagner v. Atlas Tri-State SPE, LLC*, No. 3:11-CV-75, 2012 U.S. Dist. LEXIS 190023, 2012 WL 1636857 at 6 (N.D. W. Va. May 8, 2012)).

**C.      Application of the Settlement Approval Factors.**

24.      The results of a trial on the WARN Action are uncertain and the litigation here is complex. The WARN Action involves numerous legal issues regarding the application of the WARN Act and its statutory and other legal defenses to complex facts. These issues include, *inter alia*, (i) whether the Defendants provided adequate notice to the Class Members under the WARN Act; (ii) whether the Defendants can be held liable under the WARN Act in connection with the alleged acts/omissions; (iii) whether the Defendants were entitled to give fewer than sixty (60) days' notice because of statutory exceptions under the WARN Act; (iv) whether the Defendants

had any defenses to the Class Members' wage and hour claims; (v) the computation of the amount

of damages; and (vi) whether attorneys' fees are to be awarded to the Class Members if they prevail

and whether such fees are entitled to administrative priority.

25.     Continued litigation would be costly and time-consuming and expose the Parties to

significant litigation risks.  Class Counsel has asserted that the aggregated WARN Act liability of

sixty (60) days' damages and benefits is significant.  As noted therein, the Settlement provides for

an allowed priority claim jointly and severally against the Debtors, pursuant to 11 U.S.C. §

507(a)(4) and (a)(5), equal to sixty percent (60%) of sixty (60) days' pay and benefits for each

Class member, in the aggregate amount of $14,630,825.63,[7] plus an allowed priority wage claim

under 11 U.S.C. § 507(a)(4) in the aggregate amount of $2,711,494.11 for up to eight (8) days of

pay for each Class member in resolution of their wage claims, which amount shall be subject to

the Statutory Cap.  To the extent any Class Members' Allowed Bankruptcy WARN and Wage

Claims exceed the Statutory Cap per employee, the balance shall be treated as a general unsecured

claim. In addition, the Cash Payment from the Non-Debtor Defendants will total $125,000.

Accordingly, the Parties respectfully submit that approval of the Settlement Agreement is

appropriate and warranted.[8]

26.     The Debtors submit that the Settlement Agreement is in the best interest of creditors

and the Estates.  When determining whether a compromise is in the best interests of an estate, the

Bankruptcy Court must "'assess and balance the value of the claim that is being compromised

against the value to the estate of the acceptance of the compromise proposal.'"  *In re Key3Media*

*Group*, 336 B.R. at 93 (quoting *In re Martin*, 91 F.3d at 393 (citing *TMT Trailer Ferry, Inc. v.*

---

[7] Subject to the 60% cap, for employees who had a wage garnishment for domestic support, the garnished sums will be treated as a priority claim under 11 U.S.C. § 507(a)(1).

[8] In the event that the Settlement Agreement is not approved by the Bankruptcy Court or the Settlement Agreement does not become binding and enforceable for any reason, the Parties reserve all of their rights.

*Anderson*, 390 U.S. 414, 424 (1968))); *see also*, *In re Nationwide Sports Distributors, Inc.*, 227

B.R. 455, 460 (Bankr. E.D. Pa. 1998) ("[I]n deciding whether to approve a particular compromise,

courts utilize various criteria designed to achieve the objective of having the Defendant or debtor

in possession act in [the] best interests of the estate").   To properly balance these values, the

Bankruptcy Court should consider all factors "relevant to a full and fair assessment of the wisdom

of the proposed compromise."  *In re Marvel*, 222 B.R. at 249 (quoting *TMT Trailer Ferry, Inc.*,

390 U.S. at 424); *see also*,  *Key3Media Group*, 336 B.R. at 92 ("[t]he bankruptcy court must be

"apprised of all relevant information that will enable it to determine what course of action will be

in the best interest of the estate.") (quoting *In re Martin*, 91 F.3d at 393).

27.     The paramount interest of creditors (with a true economic interest in the Bankruptcy

Case) and reasonable deference to their views also favors approval of the Settlement Agreement.

Moreover, as set forth above, the Settlement Agreement spares the Estates the significant expense

and uncertainty associated with the litigation of the myriad of issues in the WARN Action.  It also

caps the Plaintiffs' claim to sixty percent of the total potential claim under the WARN Act.  Finally,

the Settlement provides for the allowance of the Plaintiffs' claim in recognition that, given the

Debtors' current financial situation, the Allowed Bankruptcy WARN and Wage Claims may or

may not be paid based on numerous factors and circumstances in the Bankruptcy Case.

Accordingly, in light of each of the factors discussed above, the Settlement Agreement should be

approved.

**D.     The Bankruptcy Court Should Certify the Class, Appoint Class Counsel, and
Preliminarily Approve the Settlement Agreement Pursuant to Rule 23 of the
Federal Rules of Civil Procedure.**

28.     Where, as in these cases, the Bankruptcy Court has not already certified a class,

before approving a class settlement pursuant to Civil Rule 23, the Bankruptcy Court must

determine whether the proposed settlement class satisfies the certification requirements of Civil

15

Rule 23.  *Amchem v. Windsor*, 521 U.S. 591, 620 (1997); *In re Community Bank of Northern Virginia*, 418 F.3d 277, 300 (3rd Cir. 2005).

29.     "[A]ll Federal Circuits recognize the utility of Rule 23(b)(3) settlement classes." *Amchem*, 521 U.S. at 618.  *Accord Community Bank*, 418 F.3d at 299.  "The settlement class action device offers defendants the opportunity to engage in settlement negotiations without conceding any of the arguments they may have against class certification."  *Community Bank*, 418 F.3d at 299.  *See also*, *General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Lit*ig., 55 F.3d 768, 786 (3rd Cir. 1995) ("By specifying certification for settlement purposes only . . . the court preserves the defendant's ability to contest certification should the settlement fall apart.").

30.     Subdivisions (a) and (b) of Rule 23 "focus court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class Representatives." *Amchem*, 521 U.S. at 621.

**E.     The Bankruptcy Court Should Conditionally Certify the Settlement Class.**

31.     To be certified, a class must satisfy the four requirements of Rule 23(a):  (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  FED. R. CIV. P. 23; *Community Bank*, 418 F.3d at 302.  In addition, the class must satisfy the requirements of Rule 23(b)(1), (2), or (3).  In these cases, the Parties have agreed to request conditional certification under Rule 23(b)(3), "the customary vehicle for damage actions."  *Id.*  In order to certify a class under Rule 23(b)(3), the court must make two additional findings:  predominance and superiority.  That is, "[i]ssues common to the class must predominate over individual issues, and the class action device must be superior to other means of handling the litigation."  *Gates v. Rohm & Hass Co.*, 248 F.R.D. 434, 442-43 (E.D. Pa 2008).

32.     The proposed Settlement Class meets each of the foregoing elements.

16

### (i) The Rule 23(a) Criteria

33.     Numerosity requires a finding that the putative class is "so numerous that joinder of all members is impracticable."  *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182 (3d Cir. 2001).   "No single magic number exists satisfying the numerosity requirement."  *Beherend v. Comcast Corp.*, 245 F.R.D. 195, 202 (E.D. Pa. 2007) (citing *Moskovitz v. Loop*, 128 F.R.D. 624, 628 (E.D. Pa. 1989).

34.     The proposed class of approximately 1,561 Class Members easily meets the numerosity requirement and joinder of all Class Members is impractical.  The Class is sufficiently numerous to make joinder of all members impractical, and thus satisfies the numerosity requirement.  *See Gates*, 248 F.R.D. at 440 (finding that two classes made up of 400 and 1,000, respectively, satisfied the numerosity requirement).  Accordingly, the Bankruptcy Court should find that the numerosity requirement is met.

35.     The commonality requirement requires existence of at least one question of law or fact common to the Class.  Fed. R. Civ. P. 23(a)(2); *Johnston v. HBO Film Management, Inc.*, 265 F.3d 178, 184 (3d Cir. 2001).  The commonality threshold is low (*Powers v. Lycoming Engines*, 245 F.R.D. 226, 236 (E.D. Pa. 2007)), and does not require "an identity of claims or facts among class members," *Behrend*, 245 F.R.D. at 202.  Further, the existence of individual facts and circumstances will not defeat commonality so long as the Class Members allege harm under the same legal theory.

36.     Here, fundamental issues of law and fact regarding unpaid wages, notice of termination, applicability of several defenses, measure of damages and priority of claims and

attorneys' fees are common to all Class Members.[9]

37.     Typicality requires that the "named plaintiffs claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." FED. R. CIV. P. 23(a)(3); *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-296 (3d Cir. 2006) (quoting *Baby Neal*, 43 F.3d at 55). "Typicality requires a strong similarity of legal theories to ensure that the class Representatives' pursuit of their own goals will work to benefit the entire class." *Powers*, 245 F.R.D. at 236. "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Beck*, 457 F.3d at 295-296 (quoting *Baby Neal*, 43 F.3d at 55).

38.     The Class Representatives do not allege that they were singled out for disparate treatment in the manner in which they were terminated.  Instead, they allege that they suffered harm as a result of the same conduct that allegedly injured the absentee Class Members – they were allegedly terminated on or about July 1, 2019 without receiving sixty (60) days' notice and without being paid certain wages.  Accordingly, the Bankruptcy Court should find that the typicality requirement is met.

39.     With respect to adequacy, Class Representatives must "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4); *Gates*, 248 F.R.D at 441.  The adequacy inquiry "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class Representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Beck*, 457 F.3d at 296.  Thus, the court must determine "whether the

---

[9]  Class Counsel recognizes that the amount of damages is particular to each Class Member.  However, individualized damages calculations do not defeat commonality, "so long as the plaintiffs allege harm under the same legal theory." *Baby Neal v. Casey*, 43 F.3d 48, 56-58 (3d Cir. 1994).

Representatives' interests conflict with those of the class and whether the class attorney is capable of representing the class." *Johnston*, 265 F.3d at 185.

40.     The Court should find that the Class Representatives and Class Counsel adequately represent the interests of the Class Members based on the attached Declaration of Mary E. Olsen (the "Olsen Declaration").   As demonstrated by the Olsen Declaration, Class Counsel are well qualified and experienced to represent the Class Members.  Collectively, they have been appointed as class counsel in more than one hundred WARN actions, many of which were in bankruptcy cases.

41.     Incentive or service payment awards to Class Representatives are "particularly appropriate in the employment context . . . [where] the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers"). *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, lest others be dissuaded").

42.     In these cases, the Class Representatives performed important services for the benefit of the Class by commencing the litigation and willingly assisting counsel throughout the litigation.

43.     The amount of the service award agreed to in these cases is also consistent and on scale with amounts awarded in WARN class actions in bankruptcy courts across the country.  *See*, *D'Amico, et al. v. Tweeter, OPCO, LLC and Schultze Asset Management, LLC*, Adv. Pro. No. 08-51800 (Del. Bankr. 2008)(one class representative who was deposed received $15,000, the other two received $10,000 each. Service payments were approximately 3% of common fund); *Kettell*

*v. Bill Heard Enterprises, Inc*., Adv. Pro. No. 08-80153 (N.D. Ala. Bankr. 2008) (court approved service payments for two class representatives in the amount of $10,000 each. Service payments were approximately 1% of common fund); *Kohlstadt, et al, v. Solyndra*, Adv. Pro. No. 11-53155 (Del. Bankr. 2011)(class representatives received $7500 and $12,500, respectively, as service payments, which were approximately 0.6% of common fund); *Capizzi, et al., v. AWTR Liquidation Inc., f/k/a Rhythm and Hues, Inc.,* Adv. Pro. No. 2:13-ap-01209-NB  (C.D. Cal. Bankr. 2013)(class representatives received $10,000 each as service payments, which were approximately 2% of the common fund).

44.     Accordingly, the $30,000 aggregate service payment is appropriate and justified as part of the overall Settlement in light of the value of the Class Representatives' services to the Class and risks taken on behalf of the Class.[10]   Moreover, the Defendants have agreed to the proposed award of the service payments to the Class Representatives.

### (ii) The Rule 23(b)(3) Criteria

45.     Common questions of law and fact predominate over any individual issues. Predominance tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem*, 521 U.S. at 623-24; *Community Bank*, 418 F.3d at 308-09.  The proper predominance inquiry "trains on the legal or factual questions that qualify each member's case as a genuine controversy, questions that preexist any settlement." *Amchem*, 521 U.S. at 623.  "In this vein a predominance analysis is similar to the requirement of Rule 23(a)(3) that claims or defenses of the named Representatives must be typical of the claims or defenses of the classes." *Community Bank*, 418 F.3d at 309.

46.     Just as typicality exists, predominance also exists in these cases.  All of the claims

---

[10]  In addition to the service payment, the Class Representatives shall be authorized to participate in the Settlement as Class Members.

arise from an alleged violation of the WARN Act and an alleged failure to pay wages relating to the terminations that occurred on or about July 1, 2019 and thereafter. Accordingly, the Bankruptcy Court should find that the predominance requirement is met.

47.     Rule 23(b)(3) also requires a determination that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3); *Gates*, 248 F.R.D. at 443. In effect, "[t]he superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Krell v. Prudential Inc. Co. (In re Prudential Inc. Co.)*, 148 F.3d at 283, 316 (3d Cir. 1998).

48.     Rule 23 sets forth several factors relevant to the superiority inquiry: "(A) the class members interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." FED. R. CIV. P. 23(b)(3); *Gates*, 248 F.R.D. at 443. However, when class certification is being considered for settlement purposes only, the difficulties in managing a class action are not considered. *Gates*, 248 F.R.D. at 443.

49.     Here, a class action is superior to individual actions. First, the amount of each Class Member's claim is relatively small. Individually, there is little incentive in controlling the prosecution of separate actions. *See Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth

someone's (usually an attorney's) labor.") (quotation and citation omitted). It is appropriate that all the claims against the Defendants arising from the Class Representatives' allegations should be concentrated in this Bankruptcy Court. In addition, determining the claims of some Class Members, but not all, could prejudice the claims of the remaining Class Members. Accordingly, the Bankruptcy Court should find that the superiority element is met.

50. Based on the foregoing, the Bankruptcy Court should certify the Class for settlement purposes only, appoint Plaintiffs David Engelbrecht, Josiah Williamson, Gregory Mefford, Shawn Abner, Jacob Helton, and Billy Hatton as the Class Representatives, and appoint Lankenau & Miller, LLP, The Gardner Firm, P.C., Petsonk PLLC, Mountain State Justice, Inc. and Pillersdorf, DeRossett and Lane Law Offices as Class Counsel.

**F.     The Bankruptcy Court Should Preliminarily Approve the Settlement.**

51. After class certification, approval of a class settlement generally requires two hearings: one preliminary approval hearing and one final "fairness" hearing. *Gates*, 248 F.R.D. 434. "The preliminary approval decision is not a commitment [to] approve the final settlement; rather, it is a determination that 'there are no obvious deficiencies and the settlement falls within the range of reason.'" *Gates v. Rohm & Haas Co,* 248 F.R.D. 434, 438 (E.D. Pa. 2008) quoting *Smith v. Professional Billing & Mgmt. Sys., Inc.*, 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007); *see also*, *In re Community Bank of Northern Virginia*, 2008 WL 3833271 (W.D. Pa. Aug. 15, 2008). The preliminary approval determination requires the Bankruptcy Court to consider whether "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re General Motors Corp.*, 55 F.3d 768, 785-86 (3d Cir. 1995). When class certification is sought in conjunction with preliminary approval, then class member objections are

not relevant.  *Gates*, 248 F. R. D. at 444.

52.    The Settlement Agreement has no obvious deficiencies and falls well within the range of reason.  Each of the above-cited factors favors preliminary approval of the Settlement Agreement.  First, the Settlement is the result of good faith, arm's length negotiations between capable adversaries, both in mediation and thereafter.  Second, Class Counsel conducted informal discovery, analyzed the applicable law and weighed the likelihood of success during the course of the litigation and settlement negotiations.  Third, counsel for all Parties, and Class Counsel in particular, has the experience and the skill to both vigorously litigate WARN Act and wage claims and to determine when and to what extent settlement is appropriate.  Class Counsel has been collectively appointed as class counsel in over one hundred WARN cases.

53.    In light of the foregoing, the Bankruptcy Court should preliminarily approve the Settlement Agreement.

**G.    The Bankruptcy Court Should Approve the Form and Manner of the Proposed Notice of the Settlement.**

54.    Once a settlement is preliminarily approved, notice of the proposed settlement and of the fairness hearing is provided to class members.  Federal Rule of Civil Procedure 23(e) requires that all members of the class be notified of the terms of any proposed settlement.  Civil Rule 23(e) requirements is "designed to summarize the litigation and the settlement and to apprise class members of the right and opportunity to inspect the complete settlement documents, papers and pleadings filed in the litigation." *In re Prudential*, 148 F.3d at 326-27.

55.    If the Settlement Agreement in these cases is preliminarily approved pursuant to this Joint Motion, notice of the Class certification and the proposed Settlement can be combined in one notice.  *Gates*, 248 F.R.D. at 445; *Collier v. Montgomery County Housing Authority*, 192 F.R.D. 176, 186 (E.D. Pa. 2000) (citing MANUAL FOR COMPLEX LITIGATION § 30.212, at 226).  At

23

the subsequent fairness hearing, Class Members may formally object to the proposed Settlement.

*Gates*, 248 F.R.D. at 439.

56.     The Parties submit that the proposed Class Notice to Settlement attached to the

Settlement Agreement as Exhibit D meets the requirements of Rule 23(c)(2)(B).  That rule, in

pertinent part, provides as follows: "The notice must clearly and concisely state in plain, easily

understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the

class claims, issues or defenses; (iv) that a class member may enter an appearance through an

attorney if the member so desires; (v) that the court will exclude from the class any member who

requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect

of a class judgment on class members under Rule 23(c)(3)."

57.     The proposed Class Notice will be served by Class Counsel, or their designee, upon

each Class Member.  Class Counsel proposes that within five (5) business days following entry of

the order certifying the Class for settlement purposes and preliminarily approving the Settlement

Agreement, Class Counsel will serve the Class Notice substantially in the form attached to the

Settlement Agreement as Exhibit D, upon each Class Member at the last known addresses of each

Class Member according to the Debtors' relevant books and records.  *Cf. Prudential*, 148 F.3d at

327 (holding that mailings to last known addresses of class members and publication in national

newspapers sufficient to provide notice to large, multi-state class).

58.     The Class Notice includes each of the facts required by Rule 23(c)(2)(B).  The Class

Notice also outlines the terms of the Settlement Agreement, including the attorneys' fees and costs

proposed to be paid to Class Counsel, describes how each Class Member may obtain a copy of the

Settlement Agreement and provides each Class Member with a personalized projection of the net

dollar amount they would receive under the Settlement, assuming full funding of the Allowed

Bankruptcy WARN and Wage Claims.  The Class Notice also states the date, time, location and purpose of the Fairness Hearing, informs the Class Members of their right to appear at the Fairness Hearing, and describes the procedure for opting-out or objecting to the Settlement Agreement. Accordingly, the form and manner of the Class Notice is sufficient and should be approved.

**H.      The Bankruptcy Court Should Finally Approve the Settlement at the Fairness Hearing.**

59.      The Parties request the Bankruptcy Court to hold a Fairness Hearing within (60) sixty days of entry of the preliminary approval order.  At the Fairness Hearing, the Bankruptcy Court should finally approve the Settlement Agreement.

60.      Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed or compromised only with the court's approval."  *Id.*  Final approval of a settlement pursuant to Rule 23(e) turns on whether the settlement is "fair, reasonable and adequate."  FED. R. CIV. P. 23(e)(2); *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001).  "This inquiry requires the court's independent and objective analysis of the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished." *Community Bank*, 2008 WL 3833271 at * 5 (quoting *General Motors*, 55 F.3d at 785.).

61.      "The court must approve any settlement . . . of the claims . . . of a certified class." Fed. R. Civ. P. 23(e)(1)(A). The court may do so only after a hearing and on finding that the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ.P. 23(e)(1)(C). Such approval is required to make sure that any settlement reached is consistent with the plaintiffs' fiduciary obligations to the class. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). Courts considering whether to approve a proposed class action settlement may consider the

25

following factors: (1) the extent of discovery that has taken place and the stage of the proceedings;
(2) bad faith or collusion and circumstances surrounding the negotiation; (3) the experience of
counsel; (4) objections from class members; (5) the relative strength of the plaintiffs' case on the
merits; (6) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to
encounter if the case goes to trial; (7) the anticipated duration and expense of additional litigation;
(8) the solvency of the defendants and the likelihood of recovery on a litigated judgment. *Henley
v. FMC Corp.*, 207 F. Supp. 2d 489, 492-93 (S.D. W. Va. 2002) (citing *In re Jiffy Lube*, 927 F.2d
at 158; *Flinn v. FMC Corp.*, 528 F.2d 1169 (4th Cir. 1975)); *In re Montgomery County Real Estate
Antitrust Litigation*, 83 F.R.D. 305 (D. Md. 1979)).

62.     The following factors strongly support approval of the Settlement Agreement.

a.      The Settlement Agreement was reached after Class Counsel
conducted informal discovery, and the Parties analyzed the
applicable law and weighed their respective likelihood of success.
Further, the Parties shared their respective views of the WARN
Action during a mediation before Magistrate Judge Omar
Aboulhosn, as well as during informal settlement discussions.

b.      Continued litigation of the WARN Action will be complicated,
protracted and expensive and would further deplete the Estates'
resources.

c.      The Class Representatives support the Settlement Agreement and
Class Counsel believes that the bulk of the other Class Members will
have a favorable reaction to the Settlement Agreement and will
neither object to it nor opt out of it.

d.      The risk that the Class Representatives would be unable to collect
on any judgment, even if successful, was present because of the
limited resources in the Debtors' estates.

e.      When considered in light of the best possible recovery and the
attendant risks, the Settlement falls well within the range of

26

reasonableness.  The Settlement provides for (i) an allowed priority claim pursuant to 11 U.S.C. § 507(a)(4) and (a)(5), equal to 60% of sixty days' pay and benefits for each Class member, in the aggregate amount of  $14,630,825.63,[11] (ii) an allowed priority wage claim under 11 U.S.C. § 507(a)(4) in the aggregate amount of $2,711,494.11 for up to eight (8) days of pay for each Class Member in resolution of their wage claims, which amount shall be subject to the Statutory Cap, and (iii) a cash payment from the Non-Debtor Defendants totaling $125,000.  To the extent any Class Members' Allowed Bankruptcy WARN and Wage Claims exceed the Statutory Cap, per employee, the balance shall be treated as a general unsecured claim.

63.    Based on the foregoing, the Bankruptcy Court should finally approve the Settlement Agreement.

### Conclusion

WHEREFORE, the Parties respectfully request the Bankruptcy Court to enter Orders: (i) granting the Joint Motion in its entirety; (ii) certifying the Class for settlement purposes only; (iii) appointing Class Counsel and the Class Representatives, and preliminarily approving the Settlement Agreement; (iv) approving the form and manner of the Class Notice; (v) scheduling a Fairness Hearing; (vi) approving the Settlement Agreement on a final basis; and (vii) granting such other relief as the Bankruptcy Court deems necessary and appropriate.

DATED: September 1, 2020

**SUPPLE LAW OFFICE, PLLC**

Joe M. Supple, Bar. No. 8013
801 Viand St.
Point Pleasant, WV 25550
Telephone: 304.675.6249
Facsimile: 304.675.4372
joe.supple@supplelawoffice.com

**SQUIRE PATTON BOGGS (US) LLP**
*/s/ Stephen D. Lerner*

---

[11] Subject to the 60% cap above, for employees who had a wage garnishment for domestic support, the garnished sums will be treated as a priority claim under 11 U.S.C. § 507(a)(1).

27

Stephen D. Lerner (admitted *pro hac vice*)
Nava Hazan (admitted *pro hac vice*)
Travis McRoberts (admitted *pro hac vice*)
201 E. Fourth St., Suite 1900
Cincinnati, Ohio 45202
Telephone: 513.361.1200
Facsimile: 513.361.1201
stephen.lerner@squirepb.com
nava.hazan@squirepb.com
travis.mcroberts@squirepb.com

*Co-Counsel to the Debtors and Debtors-in-Possession*

AND

*/s/ Mary Olsen*
Mary Olsen
The Gardner Firm, P.C.
182 St. Francis Street, Suite 103
Mobile, Alabama 36602
Telephone: (251) 433-8100
Facsimile: (251) 433-8181

Stuart J. Miller, Esq.
Lankenau & Miller LLP
132 Nassau Street, Suite 1100
New York, New York 10038
Telephone: (212) 581-5005
Facsimile:  (212) 581-2122

Samuel B. Petsonk (WVSB # 12-418)
Petsonk PLLC
101 Ramey Court
PO Box 1045
Beckley, WV 25802
(304 )900-3171 (phone)
(304) 986-4633 (fax)
sam@petsonk.com

Bren J. Pomponio (WVSB #7774)
Clint Carte (WVSB #12054)
Mountain State Justice, Inc.
1217 Quarrier Street
Charleston, WV 25301
(304) 344-3144

28

(304) 344-3145 (fax)
bren@msjlaw.org
clint@msjlaw.org

Ned Pillersdorf
Pillersdorf Law Office
124 West Court St
Prestonsburg, KY 41653
Phone: 606-886-6090
Fax: 606-886-6148

*Counsel for Plaintiffs and the Settlement
Class*

AND

**LEXINGTON COAL COMPANY, LLC**
*/s/ Helena R. Jackson*
Helena R. Jackson, Esq.
164 Main Street, Suite 401
Pikeville, Kentucky 41501
hj@lexingtoncoal.us
859.533.4901

**DINSMORE & SHOHL LLP**
Janet Smith Holbrook (WVSBN 5853)
John (J.H.) Harlan Mahaney (WVSBN 6993)
Alexis B. Mattingly (WVSBN 10286)
611 Third Avenue
Huntington, West Virginia 25701
(304) 529-6181 Phone
(304) 522-4312 Fax
Janet.holbrook@dinsmore.com
John.mahaney@dinsmore.com
alexis.mattingly@dinsmore.com