# Exhibit B

**Olsen Declaration**

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| **In re:** <br><br> **BLACKJEWEL, L.L.C.,** *et al.* <br>                     **Debtors** <br> ---------------------------------------------------------- <br> **DAVID ENGELBRECHT, JOSIAH WILLIAMSON, GREGORY MEFFORD on behalf of themselves and all others similarly situated,** <br><br>                     **Plaintiffs,** <br><br> v. <br><br> **BLACKJEWEL, L.L.C.,** <br><br><br>                     **Defendants.** <br> ---------------------------------------------------------- | **Chapter 11** <br> **Case No. 19-bk-30289** <br> **(Jointly Administered)** <br><br><br><br> **Adversary Proceeding** <br> **No. 3:19-ap-03002** |
| **In re:** <br><br> **BLACKJEWEL, L.L.C.,** *et al.* <br>                     **Debtors** <br> ---------------------------------------------------------- <br> **SHAWN ABNER, JACOB HELTON, AND BILLY HATTON on behalf of themselves and all others similarly situated,** <br><br>                     **Plaintiffs,** <br><br> v. <br><br> **BLACKJEWEL, L.L.C., REVELATION ENERGY, LLC, LEXINGTON COAL CO., LLC, JEFF HOOPS, SR., JEFFERS A. HOOPS, II,** <br><br>                     **Defendants.** <br> ---------------------------------------------------------- | **Chapter 11** <br> **Case No. 19-bk-30289** <br> **(Jointly Administered)** <br><br><br><br> **Adversary Proceeding** <br> **No. 3:19-ap-03003** |

## DECLARATION OF MARY E. OLSEN

I, Mary E. Olsen, declare as follows:[1]

1. I am a member of The Gardner Firm, PC, one of the law firms that represents David Engelbrecht, Josiah Williamson, Gregory Mefford, Shawn Abner, Jacob Helton, and Billy Hatton, on behalf of themselves and similarly situated class members (together, the "Plaintiffs"), who allege they were terminated from their employment without cause on or about July 1, 2019, and thereafter, along with most of the workforce who worked at the facilities in the Central Appalachian Coal Basin in West Virginia, Virginia and Kentucky (the "Eastern Division," encompassing approximately 1,100 employees) and in the Powder River Basin in Wyoming (the "Western Division," encompassing approximately 600 employees).

2. On July 1, 2019 and July 24, 2019 (the "Petition Date"), the Debtors and certain affiliates initiated the Bankruptcy Case by filing voluntary petitions for relief in the United States Bankruptcy Court for the Southern District of West Virginia (the "Bankruptcy Court") under chapter 11 of title 11 of the Bankruptcy Code.

3. Prior to the Petition Date, upon information and belief, the Debtors employed approximately 1,700 employees, both hourly and salaried, including the Class Members, in their business operations.

4. On July 9, 2019 and thereafter, the Plaintiffs filed their Class Action Adversary Proceeding Complaints[2] (the "WARN Action") against the Defendants, in which the Plaintiffs asserted a class

---

[1] All terms not otherwise defined herein shall have the meaning ascribed to them in the Settlement, as defined below.
[2] The class WARN Act adversary proceedings which have been consolidated for the purposes of the Settlement are: *David Engelbrecht, Josiah Williamson and Gregory Mefford, on their own behalf and on behalf of all other persons similarly situated v. Blackjewel, LLC*; Adversary Proceeding No. 19-ap-3002 and *Shawn Abner, Jacob Helton and*

2

action claim under the WARN Act alleging that the Defendants as a "single employer" violated the WARN Act by implementing alleged plant closings or mass layoffs, without providing sixty (60) days advance written notice thereof. The Class Representatives further asserted that, as a consequence of this alleged failure, the Class Members have a claim against the Defendants for damages for the alleged sixty (60) day violation period. The WARN Action also includes wage and hour and other employment and employee benefits-related claims for the putative class members. Finally, the WARN Action asserts that the alleged damages are entitled to priority status pursuant to sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code up to the statutory maximum amount per claimant of $13,650.00 per employee pursuant to 11 U.S.C. § 507(a)(4) of the Bankruptcy Code (the "Statutory Cap").

5.      The Defendants deny these allegations and further deny that the Plaintiffs are entitled to any relief from them under any claims asserted in the WARN Action.

6.      On September 20, 2019, the Bankruptcy Court entered an order for the Parties to commence mediation with Magistrate Judge Omar Aboulhosn [D.I. 17, Case No. 19-ap-03002].

7.      On October 25, 2019, the Debtors provided the Plaintiffs with relevant wage information concerning the hourly and salaried employees whose employment Plaintiffs contend was terminated by the Debtors.

8.      On November 4, 2019, the parties mediated this matter before Magistrate Judge Omar Aboulhosn and although the WARN Action was not resolved at mediation, the Parties have been working since that date toward a resolution of this matter. Following extended settlement

---

*Billy Hatton individually and on behalf of others similarly situated v. Blackjewel, LLC, Revelation Energy, LLC, Lexington Coal Co., LLC, Jeff Hoops, Sr., Jeffery A. Hoops, II*, Adversary Proceeding No. 19-ap-03003.

3

negotiations, conducted in good faith and at arms' length, the Parties reached agreement (the "Settlement Agreement" or "Settlement")[3] on a compromise that will resolve the WARN Action, subject to the Bankruptcy Court approval, according to the terms forth therein.

9.   In general, the Settlement Agreement provides for certification of a settlement class (the "Class") comprised of all persons who were employed by the Debtors at facilities located in the Eastern Division and the Western Division and who ceased working for the Debtors on or after July 1, 2019 solely, and who do not file a timely request to opt out of the Class. The Class numbers approximately 1,561 Class Members and excludes the Debtors' employees who were brought back to work by the Debtors between the dates of July 1, 2019 and November 4, 2019. The Parties have agreed that Plaintiffs shall be named as Class Representatives and that my firm and the firms of Lankenau & Miller, LLP, Petsonk PLLC, Mountain State Justice, Inc. and Pillersdorf Law Office shall be appointed as Class Counsel. The Settlement Agreement provides that, upon the Effective Date, the Class shall be awarded (a) an allowed priority claim jointly and severally against the Debtors, as set forth on Schedule 1 to the Settlement Agreement, pursuant to 11 U.S.C. § 507(a)(4) and (a)(5), equal to sixty percent (60%) of sixty (60) days' wages and benefits for each Class member, in the total aggregate amount of $14,630,825.63, and an allowed priority wage claim under 11 U.S.C. § 507(a)(4) in the aggregate amount of $2,711,494.11 for up to eight (8) days of pay for each Class Member in resolution of their wage claims (together, the "Allowed Bankruptcy WARN and Wage Claims"), which amount shall be subject to the statutory cap of $13,650.00 per employee pursuant to 11 U.S.C. § 507(a)(4) (the "Statutory Cap");[4] and (b) a cash payment (the "Cash Payment") from the Non-Debtor Defendants totaling $125,000 ($75,000 to be paid by Jeff

---

[3] In the event of a conflict or inconsistency between the Settlement and this declaration, the Settlement will prevail over the declaration to resolve such conflict or inconsistency.

[4] To the extent any Class Members' Allowed Bankruptcy WARN and Wage Claims exceed the Statutory Cap, the balance shall be deemed a general unsecured claim.

4

Hoops, Sr. and Jeffery A. Hoops, II, jointly and severally, with the remaining $50,000 to be paid by Lexington Coal Co., LLC). The distributions from the Debtors' estates (the "Estates") on account of the Allowed Bankruptcy WARN and Wage Claims (the "Estates Distribution Payments") will be made by the Debtors in accordance with the priority scheme established by the Bankruptcy Code to a qualified settlement fund to be established by Class Counsel in conformity with Internal Revenue Code § 468B (the "Qualified Settlement Fund") pursuant to written instructions to be provided by Class Counsel. The Class acknowledges that the Allowed Bankruptcy WARN and Wage Claims is an allowed claim to be paid in accordance with the priority scheme established by the Bankruptcy Code and that such claim may or may not be paid depending on the distributions available to creditors of the Debtors' Estates and may not be paid or funded in full. The Cash Payment shall be made via wire transfer by the Non-Debtor Defendants within five (5) business days of the Effective Date to the Qualified Settlement Fund pursuant to written instructions to be provided by Class Counsel. The name of the Qualified Settlement Fund shall be *Engelbrecht v. Blackjewel QSF*, and Class Counsel or the Administrator of the Qualified Settlement Fund shall provide the Debtors and the Non-Debtor Defendants with a W-9 form for the Qualified Settlement Fund to enable the Estates Distribution Payments and the Cash Payment, respectively to the Qualified Settlement Fund.

10. The Settlement further provides that, in the event the amount of the Estates Distribution Payments is sufficient to make a full payment on the Allowed Bankruptcy WARN and Wage Claims, the total amount distributed to each Class Member on the Allowed Bankruptcy WARN and Wage Claims shall equal the amount listed on Schedule 1 to the Settlement Agreement for those claims. In the event the amount of the Allowed Bankruptcy WARN and Wage Claims is greater than the Estates Distribution Payments, the Class Members' distributions shall be reduced

on a *pro rata* basis so all Class Members receive an equal percentage of the Estates Distribution Payments. For the avoidance of doubt, the Class Counsel's Fees, Class Counsel's Expenses and the Class Representative Service Payments are payable solely out of the Qualified Settlement Fund, consistent with the terms of the Settlement Agreement, and such fees, expenses and payments are included in the amount of the Allowed Bankruptcy WARN and Wage Claims as set forth in Schedule 1 to the Settlement Agreement and not in addition to such amount. The Class Representatives shall receive an aggregate one-time payment from the first distribution from the Qualified Settlement Fund of $30,000, to be allocated as follows: $5,000 each to David Engelbrecht, Josiah Williamson, Gregory Mefford, Shawn Abner, Jacob Helton, and Billy Hatton for their service in this matter (together, the "Class Representative Service Payments"). Class Counsel shall distribute this payment to the Class Representatives, in addition to each Class Representative's individualized disbursements on account of the Settlement payments contemplated therein.[5] Class Counsel's Fees will not be deducted from the Class Representative Service Payments. Class Counsel is entitled to attorneys' fees ("Class Counsel's Fees") in the amount of one-third (1/3) of each distribution on the Estates Distribution Payments and Cash Payment, net of the one-time $30,000 aggregate payment for Class Representative Service Payments. In addition, Class Counsel is entitled to its litigation expenses (including costs associated with the production and mailing of the Class Notice and the administration of the Settlement, estimated to be approximately $75,000) ("Class Counsel's Expenses"). Class Counsel's Fees and Class Counsel's Expenses, as well as the Representative Service Payments, shall be paid exclusively by the Qualified Settlement Fund. Class Counsel's Fees and Class

---

[5] For avoidance of doubt, the Class Representative Service Payments shall have no affect on the priority amounts available to the Class Representatives for their individualized Allowed Bankruptcy WARN and Wage Claims.

Counsel's Expenses shall be payment in full for Class Counsel's work and expenses in connection with this matter.

11.     The Settlement further provides that, upon the Effective Date, the Class Members (but not the Opt-Outs), for and on behalf of themselves, and their respective predecessors, successors, assigns, heirs, personal representatives and estates (collectively, the "Releasing Parties"), fully and forever release and discharge the Non-Debtor Defendants and each of the Estates and Debtors, and each of their respective current and former members, subsidiaries and affiliated entities, and each of their respective officers, directors, shareholders, agents, employees, partners, members, accountants, attorneys, insurers, financial advisors, representatives and other agents, and all of their respective predecessors, successors and assigns (collectively, the "Released Parties"), of and from any and all claims, demands, debts, liabilities, obligations, liens, actions and causes of action, costs, expenses, attorneys' fees and damages of whatever kind or nature, at law, in equity and otherwise, whether known or unknown, anticipated, suspected or disclosed, which the Releasing Parties may now have or hereafter may have against the Released Parties which relate to or are based upon the WARN Act or any claim set forth in the WARN Action, including any claims relating to wages and benefits as described therein (the "Released Claims"). The Released Parties expressly reserve the right to object to, offset or oppose any and all claims, obligations, or causes of action, of any type, except those claims expressly allowed hereunder. Upon the Effective Date, the Class Members agree that any Released Claims shall be deemed waived without need for further court order, and the Class Members agree that any Released Claims that have been scheduled on behalf of, or filed by, any Class Members in the Bankruptcy Case are disallowed in their entirety and shall be deemed expunged from the applicable schedule(s) or claims register(s). In addition, each Releasing Party shall be deemed, upon the Effective Date, to have released each

of the Class Representatives from any and all claims whether liquidated or unliquidated, contingent or non-contingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, known or unknown that he or she may have against the Class Representatives, any successors or assignees to their legal interests, or any of their present or former agents, attorneys or consultants arising out of any Released Claim or the terms of the Settlement.  Proofs of claim filed by individuals who choose to timely opt-out of the WARN Class shall be unaffected by the release contained in the Settlement.

12.     Notwithstanding anything in the Settlement or in any pleadings relating to the Settlement, nothing in the Settlement or pleadings shall be deemed to constitute a release by the Debtors or any of their affiliates, or their Estates, of any claims whatsoever which such parties may have against the Non-Debtor Defendants or any third parties. Nothing in the Settlement or pleadings shall be deemed to constitute a release by the Non-Debtor Defendants or any of their affiliates of any claims whatsoever which such parties may have against the Debtors or any third parties.

13.     According to the Settlement, the Debtors agree to provide Class Counsel with an update every six (6) months as to (i) the amount of funds in the Debtors' Estates as of such date, (ii) the amount of outstanding claims asserted by creditors holding secured and administrative claims, and (iii) any potential recovery the Estates may obtain as of such date.

14.     If a Class Member decides not to participate in the Settlement, the Class Member need only fill out and submit the "opt-out" form according to the instructions and within the time limits approved by this Court.

15.     As set forth in the Settlement Motion, and as further supported by this declaration, and legal arguments set forth in the Settlement Motion, I submit that the proposed Class meets the

requirements of Rule 7023 of the Federal Rules of Bankruptcy and Rule 23 of the Federal Rules of Civil Procedure.

16. With respect to the numerosity requirement of Fed. R. Civ. P. 23, based on the Debtors' records, there are approximately 1561 Class Members who fall within the agreed upon Class definition. Numerosity requires a finding that the putative class is "so numerous that joinder of all members is impracticable." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182 (3d Cir. 2001). "No single magic number exists satisfying the numerosity requirement." *Beherend v. Comcast Corp.*, 245 F.R.D. 195, 202 (E.D. Pa. 2007) (citing *Moskovitz v. Loop*, 128 F.R.D. 624, 628 (E.D. Pa. 1989). I submit that the proposed class of approximately 1561 Class Members easily meets the numerosity requirement and joinder of all Class Members is impractical. The Class is sufficiently numerous to make joinder of all members impractical, and thus satisfies the numerosity requirement. *See Gates*, 248 F.R.D. at 440 (finding that two classes made up of 400 and 1,000, respectively, satisfied the numerosity requirement). Accordingly, I submit that the Bankruptcy Court should find that the numerosity requirement is met.

17. The commonality requirement requires existence of at least one question of law or fact common to the Class. FED. R. CIV. P. 23(a)(2); *Johnston v. HBO Film Management, Inc.*, 265 F.3d 178, 184 (3d Cir. 2001). The commonality threshold is low (*Powers v. Lycoming Engines*, 245 F.R.D. 226, 236 (E.D. Pa. 2007)), and does not require "an identity of claims or facts among class members," *Behrend*, 245 F.R.D. at 202. Further, the existence of individual facts and circumstances will not defeat commonality so long as the Class Members allege harm under the same legal theory. Here, I submit that fundamental issues of law and fact regarding unpaid wages,

9

notice of termination, applicability of several defenses, measure of damages and priority of claims and attorneys' fees are common to all Class Members.[6]

18. In my experience, and having been appointed as class counsel in more than seventy-five WARN class actions, commonality has been found for class certification where class members had different degrees of injury or even where defenses might exist only as to particular individuals. Further, in my experience, class action suits under the WARN Act almost always involve a class of plaintiffs who held different positions, were paid different amounts and who frequently were terminated on different dates, from different locations.

19. For these reasons, I submit that the commonality factor of Fed. R. Civ. P. 23(a)(2) is met here.

20. Typicality requires that the "named plaintiffs claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." FED. R. CIV. P. 23(a)(3); *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-296 (3d Cir. 2006) (quoting *Baby Neal*, 43 F.3d at 55). "Typicality requires a strong similarity of legal theories to ensure that the class Representatives' pursuit of their own goals will work to benefit the entire class." *Powers*, 245 F.R.D. at 236. "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Beck*, 457 F.3d at 295-296 (quoting *Baby Neal*, 43 F.3d at 55). The Class Representatives do not allege that they were singled out for disparate treatment in the manner in which they were terminated. Instead, they allege that they suffered

---

[6] Class Counsel recognizes that the amount of damages is particular to each Class Member. However, individualized damages calculations do not defeat commonality, "so long as the Plaintiff allege harm under the same legal theory." *Baby Neal v. Casey*, 43 F.3d 48, 56-58 (3d Cir. 1994).

harm as a result of the same conduct that allegedly injured the absentee Class Members – they were allegedly terminated on or about July 1, 2019 without receiving sixty (60) days' notice and without being paid certain wages. Accordingly, I submit that the typicality requirement is met.

21. With respect to adequacy, Class Representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *Gates*, 248 F.R.D at 441. The adequacy inquiry "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class Representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Beck*, 457 F.3d at 296. Thus, the court must determine "whether the Representatives' interests conflict with those of the class and whether the class attorney is capable of representing the class." *Johnston*, 265 F.3d at 185.

22. I submit that the Class Representatives and Class Counsel adequately represent the interests of the Class Members. The Class Representatives allege their employment was terminated during the relevant period and without sixty days advance written notice of termination. The Class Representatives had no involvement in the decision to allegedly terminate the employees' employment, nor did they have any involvement in the decision regarding the provision of WARN notices to the employees. The Class Representatives have no conflict of interest with the members of the Class.

23. The Class Representatives have prosecuted the WARN claim, in spite of the stigma that can accompany being a named plaintiff in class litigation and in spite of the risk of retaliation by prospective employers. They have willingly assisted counsel throughout the litigation. In this case, the Class Representatives performed important services for the benefit of the Class by commencing the WARN Adversary and willingly assisting counsel throughout the litigation.

24. Incentive or service payment awards to Class Representatives are "particularly appropriate in the employment context . . . [where] the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers"). *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, lest others be dissuaded"). The amount of the Class Representative Service Payments agreed to here is also consistent and on scale with amounts awarded in WARN class actions in bankruptcy courts across the country. *See*, *Kettell v. Bill Heard Enterprises, Inc.*, Adv. Pro. No. 08-80153 (N.D. Ala. Bankr. 2008) (court approved service payments for two class representatives in the amount of $10,000 each. Service payments were approximately 1% of common fund); *D'Amico, et al. v. Tweeter, OPCO, LLC* and *Schultze Asset Management, LLC*, Adv. Pro. No. 08-51800 (Del. Bankr. 2008) (one class representative who was deposed received $15,000, the other two received $10,000 each. Service payments were approximately 3% of common fund); *Kohlstadt, et al, v. Solyndra*, Adv. Pro. No. 11-53155 (Del. Bankr. 2011)(class representatives received $7500 and $12,500, respectively, as service payments, which were approximately .6% of common fund); *Capizzi, et al., v. AWTR Liquidation Inc., f/k/a Rhythm and Hues, Inc.*, Adv. Pro. No. 2:13-ap-01209-NB (C.D. Cal. Bankr. 2013)(class representatives received $10,000 each as service payments, which were approximately 2% of the common fund). Accordingly, I submit that the $30,000 aggregate service payment is appropriate and justified as part of the overall Settlement in light of the value of the Class Representatives' services to the Class and risks taken on behalf of the Class.[7] Moreover, the

---

[7] In addition to the Class Representative Service Payments, the Class Representatives shall be authorized to participate in the Settlement as Class Members.

12

Defendants have agreed to the proposed award of the Class Representative Service Payments to the Class Representatives.

25. Regarding the "predominance" requirement of Fed. R. Civ. P. 23(b), common questions of law and fact predominate over any individual issues. Predominance tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem*, 521 U.S. at 623-24; *Community Bank*, 418 F.3d at 308-09. The proper predominance inquiry "trains on the legal or factual questions that qualify each member's case as a genuine controversy, questions that preexist any settlement." *Amchem*, 521 U.S. at 623. "In this vein a predominance analysis is similar to the requirement of Rule 23(a)(3) that claims or defenses of the named Representatives must be typical of the claims or defenses of the classes." *Community Bank*, 418 F.3d at 309.

26. I submit that just as typicality exists, predominance also exists in these cases. All of the claims arise from an alleged violation of the WARN Act and an alleged failure to pay wages relating to employment terminations alleged to have occurred on or about July 1, 2019 and thereafter. Accordingly, I submit that the predominance requirement is met.

27. I also submit that "superiority" element of Fed. R. Civ. P. 23(b) is met. Rule 23(b)(3) requires a determination that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3); *Gates*, 248 F.R.D. at 443. In effect, "[t]he superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Krell v. Prudential Inc. Co. (In re Prudential Inc. Co.)*, 148 F.3d at 283, 316 (3d Cir. 1998). Rule 23 sets forth several factors relevant to the superiority inquiry: "(A) the class members interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the

13

desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3); *Gates*, 248 F.R.D. at 443. However, when class certification is being considered for settlement purposes only, the difficulties in managing a class action are not considered. *Gates*, 248 F.R.D. at 443. Here, a class action is superior to individual actions. First, the amount of each Class Member's claim is relatively small. Individually, there is little incentive in controlling the prosecution of separate actions. *See Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.") (quotation and citation omitted). It is appropriate that all the claims against the Defendants arising from the Class Representatives' allegations should be concentrated in this Bankruptcy Court. In addition, determining the claims of some Class Members, but not all, could prejudice the claims of the remaining Class Members. Accordingly, I submit that the superiority element is met.

28. I, along with the proposed Class Counsel from the firms of Lankenau & Miller, LLP, Petsonk PLLC, Mountain State Justice, Inc. and Pillersdorf Law Office have had and will have responsibility for this matter.

29. I am a 1990 graduate of the University of Alabama and a 1994 graduate of the University of Alabama School of Law. I was admitted to practice law before the courts of the State of Alabama in 1994 and the State of Florida in 1995. I am a partner at The Gardner Firm, PC. During my twenty-six years of law practice, I have been engaged primarily as a litigator handling cases including trials and hearings on a variety of legal matters including WARN and other employment

14

rights matters. Over the last nineteen years, I have been appointed and served as class counsel in more than seventy-five (75) WARN Act class actions nationwide.

30. M. Vance McCrary is also a partner with The Gardner Firm, P.C. He attended the University of Alabama School of Law, graduating in 2001. He is admitted to practice law in the state and federal courts of Alabama, as well as the Eleventh Circuit U.S. Court of Appeals and the U.S. Supreme Court. Mr. McCrary's practice focuses on the litigation of mass tort, class action, toxic tort and complex product liability claims. Mr. McCrary regularly litigates labor and employment cases before state and federal courts. Mr. McCrary has been lead class counsel in several state court class actions in Alabama. He has also served as co-lead class counsel in more than seventy (70) WARN Act cases on a nationwide basis.

31. Stuart Miller is a 1982 graduate of Brooklyn College and a 1987 graduate of Columbia Law School. He was admitted to practice before the courts of the State of New York in 1988. He has been engaged primarily as a litigator handling cases including trials and hearings on a variety of legal matters including WARN and other employment rights matters. Since August 1997, he has been appointed and has served as class counsel in more than one hundred (100) WARN Act cases.

32. Petsonk PLLC, Mountain State Justice, Inc. and Pillersdorf Law Office have collective experience in bringing class action litigation under ERISA and the WARN Act involving coal-mining layoffs in the Appalachian Region.

33. I submit that proposed Class Counsel are well-suited to serve as Class Counsel, they have no conflict of interest, and have diligently prosecuted the WARN Action and should be appointed Class Counsel.

34. I submit that the Class Notice attached to the Settlement will fairly apprise the class members of the nature of the dispute, the terms and benefits of the Settlement, of their right to opt-out of the Class, and of the effect of their decision not to opt-out of the class, namely, that they will be bound by terms of the proposed Settlement Agreement, including the releases of claims therein. The Class Notice also includes my direct telephone number so that Class Members can call me, should they have any questions about the Settlement.

35. The parties seek approval of service of the Class Notice by first class mail sent to the last known address of each Class Member as shown in the Debtors' books and records (or to such other address as the Class Members may indicate to Class Counsel or which Class Counsel may locate). As discussed in the Settlement Motion, I submit that service in this manner, and according to the proposed schedule, is proper.

36. In view of the foregoing and the Settlement Motion, and the Class Notice attached to the Settlement, I ask the Bankruptcy Court to enter an order for the relief requested in the Settlement Motion, and to approve all aspects of the Settlement.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on September 1, 2020 in Mobile, Alabama.

                                                  */s Mary E. Olsen*
                                                Mary E. Olsen